HENRY W. PUTNAM, receiver, *vs.* JAMES J. GRACE & others.

Suffolk. December 14, 1893. — May 14, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Purchase of a Lease — Consent of Lessor to Assignment of Lease — Specific Performance.*

A receiver was appointed of a fraternal beneficiary corporation which held an unexpired lease containing a provision that the lessee should not assign or let it for any more hazardous use, nor make any material alterations or additions other than those specified in the lease without the consent in writing of the lessor. On December 17, 1892, after the appointment of the receiver, A. offered in writing to purchase from him, for a stipulated price, the unexpired term. The receiver in writing accepted this offer "subject to obtaining the assent of B. [the lessor], and of the court if necessary." Prior to December 20, the lessor had orally consented to an assignment of the lease, but on December 23 he said to the receiver that he would not consent to such assignment. On December 28, the court gave its assent to the sale of the unexpired term by the receiver. The assent in writing of the lessor was never obtained, and on December 30 he gave to the receiver formal notice that the lease had been violated by the making of unauthorized alterations, but subsequently accepted rent from the receiver. *Held,* on a bill in equity for specific performance of A.'s agreement to purchase the unexpired term, and to compel B. to assent to its assignment, that, B. not having assented to the assignment of the term, A. was not bound to accept it. *Held, also,* that, A. not being bound at the time of filing the bill to accept the term, it could not avail the plaintiff if B. by a decree should be compelled to assent to the assignment of the lease.

If the form of a contract is such that the defendant has bound himself absolutely, and the plaintiff has not, a court of equity will be slow to lend its aid to enforce

such a contract in favor of the party who is not bound, and if, at the time of bringing his bill, the plaintiff is not bound to convey, equity will not ordinarily compel a defendant under such circumstances to accept a title.

BILL IN EQUITY, to obtain specific performance of an agreement for the purchase of an unexpired term of a lease, and to compel the lessor to assent to its assignment.

The bill alleged that the plaintiff, on November 1, 1892, was appointed the receiver of the American Protective League, a corporation organized in June, 1889, under the provisions of St. 1888, c. 429; that at the time of his appointment the League held a lease from James J. Grace, at an annual rent of $12,000, of the building numbered 181 on Tremont Street in Boston, running until May 1, 1905; that the League occupied certain rooms in the building for the purposes of its business, and sublet the remainder; that during the period of its occupancy the League, with the knowledge and consent of Grace, had expended more than $20,000 in extending the front of the building to the line of the street, and in otherwise enlarging and improving the premises, thereby increasing the value thereof; that at the date of the appointment of the receiver there remained an unexpired term of twelve years and six months, which was of value; that at divers times between September 13, 1892, and December 20, 1892, and on said December 20, the lessor Grace orally consented, through his counsel and personally to the plaintiff and others, to the sale and assignment of the lease, and to the appropriation of the money that might be obtained therefrom for the benefit of the League and of its creditors and certificate holders; that the plaintiff, relying upon such oral consent of the lessor, obtained a purchaser of the unexpired term, and on December 17, 1892, agreed in writing to assign it, together with certain office furniture in the rooms occupied by the League, to William D. Bradstreet and Joseph Bennett for the sum of $5,600, which sum the purchasers Bradstreet and Bennett agreed in writing to pay therefor; that the defendant Bradstreet signed the agreement for and on behalf of Bennett, as well as on his own behalf, and subsequently, before the filing of the bill, the written agreement was ratified by the defendant Bennett in writing; that at the time of signing the agreement Bradstreet, acting on behalf of Bennett and himself, paid to the plaintiff

the sum of one hundred dollars on account of the purchase money as an earnest to bind the bargain, leaving a balance due of the purchase money of $5,500; and that thereafter, on December 28, 1892, the plaintiff as receiver obtained a decree of the court assenting to the contract of sale and assignment of the lease to Bradstreet and Bennett, and authorizing the plaintiff to execute the same.

The bill further alleged that the plaintiff had the right to assign the lease without the consent of Grace, there being no covenant or provision therein affecting or curtailing his common law right to sign the same except that in the words following: " The said lessee for itself and its representatives further covenants that it or others having its estate in the premises will not assign this lease nor underlet the whole or any part of said premises for any use or occupation which may be fairly considered more hazardous or prejudicial to the value of the premises or of the neighboring property than the ordinary occupation of buildings of like character, nor make nor allow to be made any unlawful, improper, or offensive use thereof, and that no material alterations or additions other than those herein specified shall be made during the term aforesaid in or to the same, without the consent of the said lessor or of those having his estate in the premises being first obtained in writing allowing thereof " ; that the assignment to Bradstreet and Bennett was not to be " for any use or occupation which may be fairly considered more hazardous or prejudicial to the value of the premises or of the neighboring property than the ordinary occupation of buildings of like character," nor was " any unlawful, improper, or offensive use " of the premises to be made; that the consent of Grace was not necessary to the validity of the assignment in the hands of the receiver, that Bradstreet and Bennett were bound to accept the assignment which the plaintiff has at all times been ready to give and to deliver to them, and to pay to the plaintiff the balance of the purchase money; that the plaintiff is informed and believes that Bradstreet and Bennett are ready and willing to perform the agreement on their part, and to accept the assignment without the written consent of Grace, if the court finds that such written consent is not necessary to a valid assignment thereof, and to accept it with such

consent, if the court finds it necessary; that the agreement of December 17, 1892, was made with the previous knowledge and consent of Grace that a contract for an assignment of the lease was to be immediately made by the plaintiff; that before January 1, 1893, the plaintiff tendered to Bradstreet and Bennett a valid assignment of the lease without the written consent of Grace, and offered to perform all the terms of the contract, but that the defendants Bradstreet and Bennett refused to accept the same or to perform the contract on their part; that on December 20, 1892, Grace was informed by the plaintiff that such a contract had been made, and then consented orally to the assignment and to Bennett as an assignee thereof, and made no objection to Bradstreet when informed that he was to be the co-assignee, but that on December 23, and again on December 27, Grace informed the plaintiff that he would consent to no assignment of the lease to any person or persons, and that he should enter upon the premises and take possession thereof; that Bradstreet and Bennett are in all respects fit and proper persons for assignees of the lease, and that no fair or reasonable objection to them as tenants can be alleged by Grace, even if his consent is necessary to a valid assignment of the lease, and that his refusal to give his consent, assuming it to be necessary, is unreasonable, vexatious, fraudulent, and contrary to equity and good conscience, and that he should be compelled·by the process of the court to give the same; that on December 30 Grace sent to the plaintiff a written notice alleging that the terms of the lease had been violated by the removal of part of the wall between the leased premises and the adjoining estate, and by other material alterations not specified in the notice which he therein alleged had been made without his knowledge or consent, and that unless the premises were restored forthwith to the condition called for by the lease he would enter to determine it; that the only portion of the wall which had been removed was a small portion of the cellar or basement wall making an opening from the cellar or basement into the cellar or basement of the adjoining building; that it was made in August or September, 1892, by the lessee and occupant of the adjoining building, who leased from sub-tenants of the League the basement of the premises to be used in con-

junction with the basement occupied by them in the adjoining building; that the opening was made with the knowledge and consent of the owners of the adjoining building, who were half owners of the wall, under a permit from the inspector of buildings and in accordance with his directions and the requirements of the building laws, and with the knowledge and consent of the insurers of the building; that the opening is safely and securely made and protected, and is not an injury to the building, but a benefit and improvement to it; that according to the plaintiff's information and belief Grace knew of the opening at the time that it was being made, and knew that the basement was leased to be fitted up and used as above described, and that, whether or not this information or belief is correct, Grace was informed of the opening, leasing, fitting up, and using in October, 1892, and thereafter on November 5 and December 2, and on January 7, 1893, he accepted from the plaintiff payment of the monthly rent of $1,000 under the lease from him to the League; that such a removal was not a breach of covenant of the lease, nor ground for a forfeiture of the same, nor for an entry by Grace to terminate the same, and that if it were Grace has waived the same by accepting rent, and is estopped to enter to terminate the lease; that if the removal or any other alteration in the building is found by the court to be a ground of forfeiture of the lease, and not to have been waived by Grace, the plaintiff is ready to restore the premises forthwith to the condition called for by the lease; and that any other alterations, if such have been made, which the plaintiff denies, were not material, and were done with the knowledge and consent of Grace, and have been waived by his acceptance of rent since receiving knowledge thereof.

The prayer of the bill was that Grace might be enjoined from entering to determine the lease; that Bradstreet and Bennett should be ordered to accept an assignment of the lease without the written consent of Grace, and to pay to the plaintiff the sum of $5,500 therefor; and that, if the written consent of Grace was necessary to the validity of the assignment to Bradstreet and Bennett, he might be ordered to give the same.

The agreement for the purchase of the lease referred to in the bill was as follows:

" I, William D. Bradstreet, of Boston, offer five thousand six hundred dollars for the unexpired term of the lease of 181 Tremont Street, Boston, held by Henry W. Putnam, receiver of the American Protective League, remaining from and after January 1, 1893, and the following articles in rooms 32, 33, and 34, to wit: standing partitions with glass tops, rail in small room, shelving, carpets, standing desk at window facing toward Boylston Street, and large steel safe nearest Tremont Street. Said receiver to pay the taxes for 1892 and Mr. Dresser's commission. William D. Bradstreet.

" I hereby accept the above offer, subject to obtaining the assent of Mr. Grace, and of the court if necessary. Henry W. Putnam, Receiver of the American Protective League."

The written instrument referred to in the bill as Bennett's ratification of Bradstreet's purchase of the lease was as follows :

" Boston, Dec. 24, 1892. Bro. Putnam, — Your note received and contents noted. I will at once see Mr. Bradstreet and have the papers in your hands in season. It strikes me that, as the lease provides for extensive repairs which have been completed, the assent of Grace should also state that the repairs and alterations made meet his approval and are satisfactory. Lease will run to us both. Yours, Joseph Bennett."

The notice of the defendant Grace to the receiver that the terms of the lease had been violated was as follows :

" Boston, Mass., Dec. 30, 1892. Henry W. Putnam, Esq., Receiver. Dear Sir, — I am in receipt of yours of the 30th inst. I hereby notify you that the terms of my lease to the American Protective League have been violated by the removal of part of the wall between the leased premises and the adjoining estate, No. 181 Tremont Street, and by other material alterations which have been made without my knowledge or consent, and that, unless the premises are restored forthwith to the condition called for by the lease, I shall enter to determine the lease. Yours respectfully, James J. Grace."

The defendants severally demurred to the bill for want of equity, for multifariousness, and because the plaintiff had a full, adequate, and complete remedy at law.

Hearing in the Superior Court, before *Mason*, C. J., who sustained the demurrer of the defendant Bennett, and overruled

the demurrers of the defendants Grace and Bradstreet. The plaintiff and the defendants Grace and Bradstreet appealed, and the Chief Justice reported the case for the determination of this court. The defendant Grace subsequently waived his appeal.

*H. W. Putnam*, pro se.

1. The plaintiff can give a clear title to the lease without the written assent of Grace. He is not affected by the covenant against assignment, being an officer of the law appointed by the court. An assignment by him is an assignment by operation of law, and is therefore not a breach of condition, and his assignee gets good title. *Smith* v. *Putnam*, 3 Pick. 221, 223. *Bemis* v. *Wilder*, 100 Mass. 446, 447, 448. *Weil* v. *Raymond*, 142 Mass. 206, 213. *Goring* v. *Warner*, 2 Eq. Cas. Abr. 100. *Weatherall* v. *Geering*, 12 Ves. 504, 512. *Stanhope* v. *Skeggs*, 2 T. R. 134, 140. *Seers* v. *Hind*, 1 Ves. Jr. 294. *Doe* v. *Bevan*, 3 M. & S. 353, 358. *Doe* v. *Carter*, 8 T. R. 57, 300. *Riggs* v. *Pursell*, 66 N. Y. 193, 201. *Jackson* v. *Corliss*, 7 Johns. 531. Wood, Landl. & Ten. § 324, and cases cited.

2. The contract does not make Grace's assent a condition unless necessary for title. The clause " if necessary " qualifies " the assent of Mr. Grace and of the Court." It did not need to be repeated after " Grace," and would not be so repeated in the ordinary use of language. It cannot grammatically qualify one without qualifying the other, and there is no reason why the parties should have intended to stipulate for the assent of Grace if unnecessary, any more than for that of the court if unnecessary. So far as this case is concerned, the proviso reads, " subject to obtaining the assent of Grace if necessary." If the suit had been brought against the receiver, he evidently could not plead the lack of Grace's assent as a defence to specific performance unless that assent was essential to title. If Grace's assent were not necessary, he could perform, and would be held to perform, and he would only be protected by the proviso if the assent were necessary. There is, therefore, complete mutuality, and the defendants are held.

3. If Grace's written consent is necessary, he is estopped to withhold it, his refusal of it is vexatious, fraudulent, and inequitable after the plaintiff has changed his position and con-

tracted to sell the lease, and equity will decree that he execute it ; and consent so executed is sufficient for specific performance. *Lehmann* v. *McArthur*, L. R. 3 Eq. 746, 752. *Richardson* v. *Evans*, 3 Madd. 218. *Willmott* v. *Barber*, 15 Ch. D. 96, 105, 106.

*E. R. Anderson*, ( *C. W. Bartlett* with him,) for the defendants Bradstreet and Bennett.

ALLEN, J. The material facts shown by the plaintiff's bill, briefly stated, are as follows.

The American Protective League held a lease from Grace which had twelve years to run, the annual rent being $12,000. The lease contained a provision that the lessee should not assign it nor underlet it for any more hazardous use, etc., nor make any material alterations or additions other than those specified in the lease without the consent in writing of the lessor.

It thus appears that certain alterations were allowed, but what they were is not shown. All other material alterations were forbidden.

The American Protective League came into the hands of the plaintiff as receiver. According to the averments of the bill, the defendant Bradstreet, acting for himself and the defendant Bennett, on December 17, 1892, offered in writing to the receiver $5,600 for the unexpired term and for certain furniture. The receiver in writing accepted this offer, " subject to obtaining the assent of Mr. Grace, and of the court if necessary." On December 24, Mr. Bennett sent to the plaintiff a note, asking Grace's approval of the alterations which had been made, and this is relied on by the plaintiff as showing Bennett's recognition that Bradstreet in signing the offer of purchase of the lease was acting for Bennett as well as for himself.

Prior to December 20, Grace had orally consented to an assignment of the lease ; but on December 23, Grace told the receiver that he would not consent. On December 28 the court gave its assent to the sale of the lease by the receiver. Grace's consent in writing was never obtained. On December 30, Grace gave to the receiver formal notice that the lease had been violated by making alterations, etc. Large alterations had been made in the premises, costing $20,000 ; whether these were all included in those specified in the lease does not appear ;

but Grace, in his notice of December 30, specified one alteration as unauthorized, and asserts that there were others which were made without his consent or knowledge. The receiver does not allege any consent in writing by Grace, but alleges that the alterations were beneficial, and that Grace has waived them.

It would seem, from the facts stated, that Grace's consent to the assignment of the lease might be important to purchasers of it, as otherwise they might run the risk of taking a title which he could defeat.

In view of this, we must look to see what contract was made by the defendants, taking all the averments of the bill as true.

The bill need not aver that the contract was in writing, or that a memorandum in writing was made ; but if it appears on the face of the bill that no written contract was made or written memorandum signed by the defendants, a demurrer will lie. *Walker* v. *Locke*, 5 Cush. 90. *Slack* v. *Black*, 109 Mass. 496. *Ahrend* v. *Odiorne*, 118 Mass. 261.

In this case, there is no averment of any agreement by the defendants except such as was contained in the written paper, one part of which was signed by the defendant Bradstreet, and the other by the plaintiff, on December 17. We therefore have to look to the writing alone to see what contract was made. It does not clearly appear whether the written offer of the defendants to pay $5,600 for the unexpired term, and the written acceptance by the plaintiff, were made at the same time, and as parts of the same transaction, or not. We will therefore look at the transaction in both aspects.

First. If the defendants sent to the plaintiff an offer in writing, as a proposal on their part, and the plaintiff returned to them a writing accepting the offer, " subject to obtaining the assent of Mr. Grace, and of the court if necessary," this was not an unqualified acceptance, but it added a new term, which was a matter of substance, and a real addition. Where an offer is made by one party, and the other annexes a condition to his acceptance, there is no completed contract till the party making the first offer assents to the condition. Till that is done, their minds have not met. In the plaintiff's bill there is no averment that the defendants ever assented to the condition imposed by the plaintiff, and therefore, if the defendants' offer

and the plaintiff's acceptance on condition were separate transactions, no contract was completed.

·Secondly. The other aspect is, that the offer and the acceptance were made at the same time and as one transaction; and that the form into which the parties put their contract was an offer signed by the defendants, and an acceptance signed by the plaintiff, these two together showing the contract, just as if it had been written in the form of a memorandum of an agreement whereby the defendants offered $5,600, and the plaintiff accepted the offer subject to obtaining the assent of Grace, and of the court if necessary, both signing this memorandum at the end.

Assuming that this is the true view of the contract, we have to inquire what would be the duty and obligation of the defendants under it, since the plaintiff could not obtain the assent of Grace. Would the agreement have the effect to bind the defendants absolutely, but the plaintiff only conditionally? Would it enable the plaintiff to hold the defendants by their offer, although he was unable to fulfil the condition by which he himself would become bound? In other words, would the defendants be bound to take the lease without the assent of Grace to its assignment? It seems to us that the assent of Grace is made a condition of the contract's taking effect. The element thus introduced in connection with the plaintiff's acceptance affects the promise of each party. The contract is to become effectual provided Grace assents. It is as if the plaintiff had written, " I accept your offer, but our contract is subject to obtaining Grace's assent." The plaintiff knew that the lease which he had to assign was valueless if the conditions which it contained relative to alterations had been violated. He could not sell it so as to convey any title. Nor did the defendants wish to purchase if no title was conveyed. It is not likely that the defendants would mean to bind themselves to buy and pay for the lease without Grace's assent, if it was made known that the plaintiff would not agree to sell and assign it without such assent. See *Love* v. *Sortwell*, 124 Mass. 446.

This is not like the case of an option, which, when accepted, becomes binding upon both parties. Nor is it like the case of a contract which is made conditional on a future event, which has

happened, so that the contract has become mutual before
either party has withdrawn. Of course a contract may spring
from a proposal which is a mere offer till accepted, but which,
by being accepted before it is withdrawn, becomes a complete
contract. Here, the peculiarity is that the plaintiff was never
bound at any moment before bringing his bill.

What has heretofore been said relates to the construction of
the contract; but there is another phase of the case relating
more especially to the remedy. If the form of the contract is
such that the defendant has bound himself absolutely, but the
plaintiff has not bound himself, a court of equity is slow to lend
its aid to enforce such a contract in favor of the party who is
not bound. If at the time of bringing his bill, the plaintiff was
not bound to convey, a court of equity will not ordinarily com-
pel a defendant under such circumstances to accept a title.
There must be a mutuality of obligation, or the court refuses to
interfere. See Beach, Eq. Jur. §§ 585–587; *Butman* v. *Porter*,
100 Mass. 337; *Marble Co.* v. *Ripley*, 10 Wall. 339, 359;
*Wylson* v. *Dunn*, 34 Ch. D. 569, 577, 578. The consent of
Grace not having been obtained, there never was a moment
prior to the filing of this bill when the plaintiff was bound to
assign the lease to the defendants. If it had so happened that
the defendants were willing to take their chances in respect to
Grace, but the plaintiff wished not to assign the lease, the
defendants could not have compelled him to do so. The pro-
vision "subject to obtaining the assent of Mr. Grace" would
protect him.

Under such circumstances, the plaintiff is not entitled to the
assistance of a court of equity. It does not avail the plaintiff to
say that Grace's consent may be compelled by a decree in this
case. The question is, Were the defendants bound at the time
of filing the bill to accept the title? See *Ely* v. *McKay*, 12
Allen, 323; Beach, Eq. Jur. § 585, and cases cited.

For these reasons, the demurrers must be

*Sustained.*