## Staunton.

## ASBERRY V. MITCHELL.

### September 20, 1917.

1. VENDOR AND PURCHASER—*Specific Performance—Sufficiency of Description of Land.*—In a contract for the conveyance of land, the specific performance of which was sought by complainant, the land was described as 100 acres of land bounded by R. on the north and by M. on the south, off of the west end of the farm of the vendor. The location of the R. and M. tracts, and the western boundary of the vendor's land were well known to all the parties. As the language of the contract, giving the north and south boundary, and providing that the 100 acres be cut off of the west end of the farm of the vendor, necessarily imports that the east line must run due north and south, the land is sufficiently described in the contract to enable the court, with the aid of permissible extrinsic evidence, to locate it.

2. BOUNDARIES—*Deeds—Contracts of Sale—Parol Evidence.*—Evidence *aliunde* is admissible in all cases where there is a doubt as to the true location of the survey, or a question as to the application of a grant to its proper subject matter. It is not a question of construction, but of location. It is a question of fact, to be determined by the jury, or by the court, by the aid of extrinsic evidence.

3. SPECIFIC PERFORMANCE—*Infants.*—An infant can compel specific performance of a contract for the conveyance of land to him, made with an adult, based on the consideration that the infant should pay all expenses of the adult at a hospital and maintain him during his natural life, which covenants the infant had performed.

4. SPECIFIC PERFORMANCE—*Personal Services.*—Where the consideration of a contract for the conveyance of land involves personal services to be rendered by the grantee to the grantor, a court of equity will not decree specific performance, because it cannot look after the rendition of personal services. The rule, however, is otherwise where, by the performance of the services contracted for, the contract becomes mutual in obligation and remedy.

Opinion.

5. SPECIFIC PERFORMANCE—*Infants.*—Want of mutuality is said to be the only reason assigned why a court of equity will not decree specific performance of a contract at the suit of an infant. And where at the time of the institution of the suit for specific performance, the infant has fully performed the contract on his part, there is no want of mutuality of obligation and remedy, and specific performance may be rightly decreed.

6. INFANTS—*Judgments and Decrees.*—Under statutes similar to section 3424, Code 1904, even in cases where infants were defendants, as a general rule, it has been held that they are as much bound by decrees as an adult, and can only impeach them for causes for which an adult could, such as fraud, collusion, error, or the like. With stronger reason must this be true when the decree is in favor of the infant and in a suit in which he is plaintiff.

Appeal from a decree of the Circuit Court of Tazewell county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*J. Powell Royall* and *Jackson & Henson,* for the appellant.

*Greever, Gillespie & Divine* and *C. R. Brown, Jr.,* for the appellee.

WHITTLE, P., delivered the opinion of the court.

E. R. Mitchell, an infant suing by his next friend, brought this suit against the administrator and heirs of H. C. Asberry, deceased, to enforce specific performance of a written contract whereby Asberry agreed, in consideration of natural love and affection, and for the further consideration that Mitchell would pay all his expenses at the Abingdon hospital, and maintain him during his natural life, to convey to Mitchell the one hundred acres of land described in the contract, together with all his personal property. From a decree granting the prayer of the bill this appeal was allowed.

The mother of appellee was a daughter of Asberry, and died when the child was only sixteen days old, at which time the grandfather took him to his home where he has ever since resided. In May, 1915, Asberry, then seventy-nine years of age, developed bladder trouble, and was advised by his physician, Dr. Holmes, to go at once to the hospital at Abingdon, Virginia, for treatment. At that time Asberry informed Dr. Holmes that he "wanted to fix it so Elbert Mitchell, his grandson, would get 100 acres more land, and his personal property," and asked the doctor if he "could fix it for him." Dr. Holmes further testified that Asberry "did not itemize his personal property, but told me he wanted Elbert to have it all; and I asked him in regard to his money, and he said that too—money and notes." Witness stated that Mr. Asberry then gave him the boundaries of the land as they are set out in the contract; whereupon he tore a leaf out of his day book and wrote the contract and read it to Asberry, who said that was what he wanted. The contract was then signed by both parties and delivered to appellee, who requested Dr. Holmes to keep it for him, which he consented to do and it remained in his possession until Mr. Asberry's death, which occurred some ten months afterwards. Although, as might be expected in a controversy of this character, the evidence was conflicting, nevertheless it preponderated in appellee's favor and showed that he had in good faith fully performed the contract on his part.

.In this state of the record, two controlling propositions of law are submitted for our determination:

1. Is the one hundred-acre tract of land sufficiently described in the contract to enable the court with the aid of permissible extrinsic evidence to locate it; and

2. Whether or not an infant can compel specific performance of a contract for the sale of land made with an adult, based on the consideration that he should pay all expenses

of the latter at a hospital and maintain him during his natural life, which covenants the infant had performed?

These propositions will be considered in the order stated.

1. The land in controversy is described in the contract as "100 acres of land bounded by Sarah M. Ratliff on the north and by E. R. Mitchell on the south, off the west end of the farm of H. C. Asberry." The record showed that Asberry's land was situated on the north side of Clinch mountain in Little valley, in Tazewell county; and the location of the Ratliff and Mitchell tracts, and the western boundary of Asberry's land were well known to the parties. Thus, we have a definite boundary of the one hundred acres to be cut off, on the north, south and west; and the circuit court correctly held that the remaining line, the east line, should be run due north and south (from the Ratliff land on the north to the Mitchell land on the south), so as to include one hundred acres. Accordingly, the county surveyor of Tazewell county was directed to go upon the land described in the contract, and lay off the one hundred acres as indicated above, and report. It is not perceived wherein this description is insufficient to enable the one hundred acres to be definitely and accurately located.

It is well settled, that "Evidence *aliunde* is admissible in all cases where there is a doubt as to the true location of the survey, or a question as to the application of a grant to its proper subject-matter. It is not a question of construction, but of location. It is a question of fact, to be determined by the jury (in this instance by the court) by the aid of extrinsic evidence." *Reusens* v. *Lawson*, 91 Va. 226, 235, 21 S. E. 347, 349.

In the present case, the contract supplied the necessary data, and the ascertainment of the correct location of the eastern line was merely a question of surveying.

In *Warren* v. *Makely,* 85 N. C. 12, the following description was held sufficient to identify the part to be cut off as a distinct tract: "100 acres lying in Currituck township, near the head of Smith creek, it being the easternmost portion of the farm purchased from my brother and known as the Russell land."

In *Bank* v. *Catzen,* 63 W. Va. 535, 60 S. E. 499, it was held: "The terms 'eastern one-half', in a deed conveying one-half of a tract of land, in the absence of admissible parol evidence, disclosing a different intention, would mean the eastern half, formed by a line to be run due north and south through the tract." See also, *Lavis* v. *Wilcox,* 116 Minn. 187, 133 N. W. 563; *Robinson* v. *Taylor,* 68 Wash. 351, 123 Pac. 444, Ann. Cas. 1913 E, 1011; *Schmitz* v. *Schmitz,* 19 Wis. 207, 88 Am. Dec. 682.

The language of the contract, giving the north and south boundary, and providing that the one hundred acres be cut "off of the west end of farm of H. C. Asberry," necessarily imports that the east line must run due north and south, since no other course would satisfy the language of the contract.

2. The remaining question is, whether or not an infant can compel specific performance of a contract for the sale of land made with an adult, based on the consideration that he should pay all expenses of the latter at a hospital and maintain him during his natural life, which covenants the infant had performed.

If appellee had been an adult when the contract was entered into with his grandfather, it could not have been specifically enforced by either party while it remained executory on both sides, because of want of mutuality in remedy. Part of appellee's consideration involved the performance of personal services for the grandfather; and in such case a court of equity will not decree specific performance, because it cannot look after the rendition of personal

services. Eaton on Eq., 536; *Newman* v. *French*, 138 Iowa, 482, 116 N. W. 468, 18 L. R. A. (N. S.) 218, 128 Am. St. Rep. 212; *Iron Age Pub. Co.* v. *Telegraph Co.*, 83 Ala. 498, 3 So. 449, 3 Am. St. Rep. 758.

The rule, however, is otherwise where, by the performance of the services contracted for, the contract becomes mutual in obligation and remedy. The reason for the refusal being no longer in existence when the suit is brought, specific performance in such case may be decreed. *Boyd* v. *Brown*, 47 W. Va. 238, 34 S. E. 907; *Welch* v. *Whelpley*, 62 Mich. 15, 28 N. W. 744, 4 Am. St. Rep. 810; *Bigler* v. *Baker*, 40 Neb. 325, 58 N. W. 1026, 24 L. R. A. 255; *Denler* v. *Hill*, 123 Ind. 68, 24 N. E. 170.

Want of mutuality is said to be the only reason assigned why a court of equity will not decree specific performance of a contract at the suit of an infant. *Flight* v. *Bolland*, 4 Russ. 298; *Ten Eyck* v. *Manning*, 52 N. J. Eq. 47, 27 Atl. 900; *Tarr* v. *Scott*, 4 Brewst. (Pa.) 49.

In *Seaton* v. *Tohill*, 11 Colo. App. 211, 53 Pac. 170 (cited in 36 Cyc. 629, n. 40), the court said in part: "This was a suit instituted by the infant, and its sole aim and object was to compel the adult defendant to specifically perform her agreements in a contract which it was manifestly to the benefit and interest of the plaintiff to have performed. Moreover, it was apparent from the allegations in the complaint that a failure to enforce the contract would result in serious pecuniary loss to the infant. The defendant alone was seeking to evade the contract and was allowed to do so by reason of the non-age of the plaintiff. According to every rule of law applicable to infancy, this was a case which called for the interposition of the court in its favor.

"The judgment was erroneous for another reason. The contract was completed on the part of the infant plaintiff. Nothing whatever remained to be done by him under the terms of the agreement. Upon the refusal of the defendant to accept the money which he was obliged to pay, and which

he had tendered, he had paid it into the court for her benefit."

That case is very similar in its facts to this case, and the decision rests on two grounds: First, that it was beneficial to the infant to have specific performance of the contract; and, second, that the contract on his part had been fully performed. In that case, the prayer was for the assignment of a lease, while in this case it is for the transfer of title to real estate. There seems to be no difference in principle between the two cases.

It is said in 36 Cyc. 629: "Specific performance of an infant's contract at his suit is refused, in England, on the ground that there is no mutuality of remedy; but this ruling has not been universally followed in this country, since it enables the other party to the contract to take advantage of the plaintiff's infancy, and thus contravenes the general policy of the law relating to infants' contracts. After the infant becomes of age, he may enforce in equity contracts made by him during his minority; the fact that they were previously voidable by him is no defense."

In answer to the suggestion that specific performance should be denied in this class of cases, because infants' contracts for the purchase of real estate cannot be affirmed during their minority, in 22 Cyc. 699 (referring to statutes similar to section 3424 of our Code) it is said: "Even independent of statute it has been held that a judgment irregularly obtained against an infant may be set aside after he has become of age, but in many jurisdictions the statutes give to an infant against whom a judgment or decree has been rendered, a certain time after obtaining majority within which he may show cause against or proceed to vacate it. Such a statute has also been held not applicable to a judgment in an action in which the complaining infant was the actor, and in the absence of fraud or collusion, a decree rendered in an infant's favor on a bill by next friend,

whether involving real or personal estate, cannot be reopened by an infant."

Even in cases where infants were defendants, as a general rule, it has been held that they are as much bound by decrees as an adult, and can only impeach them for causes for which an adult could, such as fraud, collusion, error, or the like. With stronger reason must this be true when the decree is in favor of the infant and in a suit in which he is plaintiff. *Brown* v. *Armistead,* 6 Rand. (27 Va.) 594; *Zirkle* v. *McCue,* 26 Gratt. (67 Va.) 517; *Harrison* v. *Wallton,* 95 Va. 721, 30 S. E. 372, 41 L. R. A. 703, 64 Am. St. Rep. 830; *McComb* v. *Gilkerson,* 110 Va. 406, 66 S. E. 77, 135 Am. St. Rep. 944, 18 Ann. Cas. 1027.

In construing section 3424, our decisions hold that, "The right of an infant to show cause against a decree which affects his interest, after he arrives at age, must be limited to extend to cause existing at the rendition of the decree, and not to such as arose afterwards." *Walker's Ex'or* v. *Page,* 21 Gratt. (62 Va.) 636; *Morriss* v. *Virginia Ins. Co.,* 85 Va. 588, 8 S. E. 383.

At the time of the institution of the suit, appellee having fully performed the contract on his part, there was no want of mutuality of obligation and remedy, and specific performance was rightly decreed.

For these reasons, we are of opinion that the decree of the circuit court should be affirmed.

*Affirmed.*