# Richmond.

## W. I. TULIN v. TURNER M. JOHNSTON, ET ALS.

March 21, 1929.

The opinion states the case.

*Rixey & Rixey*, for the appellant.

*Jenkins & Jenkins, J. Hume Taylor, Edward W. Ruffin* and *G. Johnston Pugh*, for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

This is a suit for specific performance of a contract for the sale of land. The complainants (adults) and an infant, Jordan A. Pugh, Jr., are the joint owners of the property. W. I. Tulin, the appellant, alleged to be the vendee, and this infant joint owner were made defendant in the bill, which avers the ownership of the property, and relies upon a written contract which reads:

"November 3, 1926.
"MR. W. I. TULIN:
"For and in consideration of $1.00 in hand received from W. I. Tulin, I, Turner M. Johnston, as agent for the estate of Mrs. Mary E. Johnston, deceased, hereby agree to sell to Mr. W. I. Tulin the property known as number 203 Fenchurch street for the sum of $2,250.00

to be paid in cash on delivery to Mr. Tulin of a good and sufficient deed to said property. This property to be delivered free from all encumbrances.

"TURNER M. JOHNSTON, Agent.
"WILLIAM I. TULIN."

At the time this contract was made, the property was not owned by the estate of Mary E. Johnston, deceased, but by her children and grand-children, two of whom, at its date, were infants, but one of whom attained his majority before this suit was instituted.

The bill alleges that a suit for partition was thereupon instituted, which set up the contract, and sought to have a sale of the property in that suit at the price mentioned in the contract. The result of that suit for partition was the direction to special commissioners to execute a conveyance with special warranty of title to Tulin. Tulin was not a party to that suit for partition, and there is no evidence that he had any notice or knowledge of it, or made any offer to buy the property under the decrees in that suit. The bill in this suit then avers that upon the entry of that decree in the partition suit, the special commissioners executed the deed which they were directed to execute, and tendered it to Tulin December 31, 1926; whereupon Tulin refused to accept the deed and definitely repudiated the contract, claiming that it was only an option which he decline to exercise. The complainants in this suit aver their willingness and ability to make proper conveyance of the premises, and they ask for a decree for specific performance.

The infant defendant, by guardian *ad litem*, filed a formal answer submitting his interests to the protection of the court.

The defendant, Tulin, filed a general demurrer to the bill, and among the grounds of demurrer claimed

that the alleged contract was only an option to him, without any obligation on his part to exercise it; that the document neither obligates him to purchase the property, nor is it an offer to the court. The court overruled that demurrer.

Tulin then filed his answer, in which he alleges that the agreement was never intended to be anything more than an option to purchase, giving him the right to do so, but imposing no obligation upon him, and that he had never exercised his rights under the option. He also alleged that Turner M. Johnston represented to him that the property fronted twenty-five feet on Fenchurch street, and that at the time he told Johnston he would not be interested in it unless it had that frontage; that he relied upon that representation but has since discovered that the property has a frontage of only twenty-one feet, four and one-half inches, on that street, while the deed tendered describes it as fronting twenty-two and eighty-five hundredths feet; that the contract is unenforceable because it lacks that mutuality which is required by law; that it purports to be a contract for the estate of Mrs. Mary E. Johnston, whereas the fact is that during her life she only had a life estate in the property, which ceased at her death, and that neither he as vendee nor the present owners of the property as vendors are bound by the alleged contract; that at the time of the execution of the paper two of the owners were infants; and there are other allegations which we deem immaterial in this connection.

Then, referring to the partition suit, he alleges that it was instituted and conducted without his knowledge or consent; that he took no part therein, and is in no way bound by its result.

Among other defenses, the answer alleges that the averments in the partition suit, praying for a sale in that suit, are inconsistent with the present claim in this suit that a binding contract to sell the property to him was already existent. The bill in the suit for partition contained the usual allegations of ownership and desire for partition, was followed by a finding that the property could not be divided in kind, and resulted in a decree for sale and conveyance. The defendant, Tulin, alleges that because of the averments in that bill for partition the complainants are now estopped to set up and sue upon the alleged contract, insists that even if it be a contract for sale he, as purchaser, is entitled to a general warranty deed, with the English covenants of title, and that such a deed has never been tendered to him.

There were some conflicts in the testimony, which, in our view of the case and the conceded facts, it is unnecessary to discuss. The trial court entered a decree, requiring the appellant to comply with the terms of the contract, directing him to accept the deed tendered in this suit which is signed by the special commissioners appointed in the other, i. e., in. the partition suit, and by all of the adult owners, and conveys the property with general warranty and contains the usual covenants of title.

In our view of the case it is only necessary for us to consider or determine one of the questions raised. That question is, whether specific performance of an unexecuted contract to sell land can be enforced for the benefit of an infant vendor who continues to be an infant at the time of the decree.

So much has been said and written on this and kindred questions, and there are so many distinctions when the mutuality of right and remedy under such

contracts is involved, that the question frequently becomes one of great difficulty in its practical application. As to the precise phase of it which is here presented, however, we think there is no difference of opinion.

Mr. Williston, in his most careful discussion of the required mutuality in such contracts and the many exceptions (3 Williston on Contracts, section 1438, page 2562), and referring alone to contracts with infants, thus expresses the true rule: "An infant is not allowed to enforce a contract specifically, because it is said the contract lacks mutuality. This is often thought to mean merely that since the adult could not have enforced the contract against the infant, the infant is similarly deprived of equitable relief, but the difficulty is not simply that the adult could not have enforced the contract against the infant, but that even though the adult performed the contract, the infant might subsequently exercise his privilege to rescind the transaction. The decree of the court should not be used to deprive him of his privilege; and unless he is deprived of it, the adult is subject to injustice if compelled to perform. This difficulty does not arise where the infant has come of age before seeking to enforce the contract. In such a case specific performance should be granted; and also where the infant has irrevocably performed his side of the contract."

This is the language, referring to the same subject, in 25 R. C. L., section 35, page 234:

"*Disability as Affecting Mutuality*.—By reason of the doctrine of mutuality, an executory contract containing mutual covenants which is not enforceable as regards one of the parties because of infancy, coverture, or other disability will not be enforced in equity against the other party. Hence it is a general rule that where a married woman does not have capacity to bind her-

self to the performance of an executory contract, the party assuming to contract with her is not, in equity, obliged to perform such contract on his part. Similarly an infant cannot sustain a suit for the specific performance of a contract, because the remedy is not mutual. But in all such cases where the one under legal disability has performed all his obligations, equity may compel specific performance on the part of the other."

The precise question is the subject of a note to the recent case of *Bracy* v. *Miller* (169 Ark. 1115, 278 S. W. 41), in 43 A. L. R. 121. It is there said that, subject to several well established exceptions, it is the general practice of courts of equity to refuse specific performance of a contract in favor of one party to it where specific performance could not have been required of him; and so that ordinarily specific performance cannot be allowed in favor of an infant during his minority. This seems to be the established rule: *Flight* v. *Bolland* (1828), 4 Russ, chapter 298, 38 Eng. Reprint 817, 6 Eng. Rul. Cas. 693; *Hargrave* v. *Hargrave* (1850), 12 Beav. 408, 50 Eng. Reprint 1117; which has been often restated. *Solt* v. *Anderson*, 63 Neb. 734, 89 N. W. 306; *Wood* v. *Lett (feme covert)*, 195 Ala. 601, 71 So. 177.

In *Ten Eyck* v. *Manning* (1893), 52 N. J. Eq. 47, 27 Atl. 900, it was said that no decree can be made against an infant ordering him specifically to perform his contract to convey property, because he is incompetent to make a valid contract to convey; if he signs such a contract, and an attempt is made to enforce it by suit by his next friend, the suit will be dismissed at the cost of the next friend.

An exception to the general rule which has been stated is this: If at the time of the institution of the suit the infant has fully performed his obligations

under the contract of which he seeks performance, there is no want of mutuality of obligation and of remedy, and the decree sought should be issued.

This is illustrated by the Virginia case of *Asberry* v. *Mitchell* (1917), 121 Va. 276, 93 S. E. 638, L. R. A. 1918A, 785, where it was held that an infant was entitled to specific performance of a contract for the sale and conveyance of land to him, based upon the consideration that the infant should pay all of the expenses of an adult at a hospital, and maintain him during his natural life, where it was shown that at the time of the suit the adult was dead and that the infant had fully performed his part of that agreement. That case cites *Seaton* v. *Tohill* (1898), 11 Colo. App. 211, 53 Pac. 170. *Goddin* v. *Vaughan*, 14 Gratt. (55 Va.) 102, illustrates another exception.

■■ The most recent case, so far as we know, and one which seems quite like the case in judgment is *Freeman* v. *Fishman* (1923), 245 Mass. 222, 139 N. E. 846. In that case there was a contract in writing in which it appeared that Freeman, an infant, through her father, acting in her behalf, made a contract to sell real estate. Realizing there, as here, that the infant could not convey title, there was a legal proceeding whereby the guardian sought and obtained a decree granting the infant's guardian license to sell the particular property in accordance with the contract. The other parties had notified the guardian that they would refuse to buy or perform the agreement. In the course of the opinion this is said: "When the agreement was executed in the name of the plaintiff by her father, defendant by Fishman as principal and agent, the plaintiff was a minor and her agreement, and the acts of her agent, were voidable by her during her minority. It is the usual rule, and there are no

facts in evidence of change of situation or partial performance to bring this case outside the rule, that specific performance will not be enforced against a defendant when performance by the plaintiff rests in his absolute volition. As is commonly said: 'There must be a mutuality of obligation, or the court refuses to interfere.' *Putnam* v. *Grace*, 161 Mass. 237, 247 [37 N. E. 166]; *Flight* v. *Bolland*, 4 Russ. 298; 6 Eng. R. C. 693; *Ten Eyck* v. *Manning*, 52 N. J. Eq. 47 [27 Atl. 900]; *Tarr* v. *Scott*, 4 Brewst. [Pa.] 49. See *Asberry* v. *Mitchell* [121 Va. 276, 93 S. E. 638], L. R. A. 1918A, 785, and note. * * * The license of the probate court did not by its terms ratify and make firm and unrevocable the agreement and obligation of the plaintiff to the defendants, if that court had authority so to decree. See *Frantz* v. *Lester*, 82 W. Va. 328 [95 S. E. 945], 2 A. L. R. 1558 and note. No contract was made by the defendants with the guardian as such acting under the license of the probate court."

These expressions are peculiarly appropriate in connection with this case. Of course, if at the time of the agreement Tulin had been told of the necessity for the partition suit, or if in the partition suit Tulin had made an offer to the court to buy the property and the court had directed acceptance of his bid and confirmed the sale, the purchaser would doubtless have been bound and would have received a good title. Such a transaction, however, would neither have been because of, nor would its validity in any way depend upon or result from, the previous invalid contract. The vendee's title in such a case would depend and be based solely upon that suit and the statute regulating the partition of real estate. As has been stated, Tulin was not a party to that suit and entered into no contract

to buy the property under the decree in that suit. He declined to accept the first deed tendered him by the special commissioners in that suit.

This obstacle the appellees realize fully, for they are here only relying upon that suit as a fact which in some way validates or aids this contract for the sale of the infant's interest in the property and supports this decree for specific performance. This cannot be. Certainly the court had jurisdiction to sell the property in the partition suit, but it could not in that suit, against the protest of Tulin, force him to buy it, or validate the previous invalid contract to sell it. Had the purchaser accepted the second deed which was tendered him, this would not have precluded the infant, Jordan A. Pugh, Jr., from hereafter attacking the validity of the proceedings. Should the purchaser be required to accept the deed which is now tendered, and the infant after coming of age should undertake to repudiate the contract and attack the proceedings, and could show that the sale was against his interest, it might be difficult to uphold the transaction, which in some aspects is unusual. It would neither be a sale in the partition suit nor a sale under the statute for sale of lands of infants. If this decree should be affirmed, then Tulin would derive his title to the infant's interest directly from the decree in this suit for specific performance of the original contract. To affirm the decree would require the appellant to accept a questionable title and would be to disregard the rule which we have stated, for we perceive nothing which brings the case within any of the exceptions to it. It may be true that the real reason the appellant declines to accept the property is because he has changed his mind as to the bargain, and that under the peculiar facts of the case his refusal to comply with his agreement cannot

be justified in the forum of ethics, but this, if so, is insufficient.   While it seems to be a hard case upon the appellees, nevertheless to sustain their contentions would establish a bad precedent which would ignore and contravene the wise and logical rule which governs the case.

Under the circumstances here shown and for the reasons indicated, specific performance is denied, and the bill will be dismissed.

*Reversed.*