# Richmond

## J. W. Ash v. J. Louise Wesley, Et Als.

January 13, 1941.

Record No. 2290.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*James G. Martin & Son,* for the appellant.

*John B. Jenkins, Jr.,* and *Louis B. Fine,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

The facts in this case are without conflict. The answer to the questions raised depends upon the effect of these facts. They will be, therefore, stated somewhat fully.

J. W. Ash, being forced to secure new quarters for his business, through his agent, approached Messrs. E. S. Ruffin and Sons, attorneys, with reference to the purchase of a lot and building, known as 163 Church street, in the city of Norfolk, Virginia. He was informed that the property was for sale; but that because of the interest of an infant therein, it would have to be sold through a court proceeding.

The property in question consisted of a brick store building over seventy years old, situated on a lot fronting about 20 feet on Church street and running back to a depth of 118 feet. The building was in a bad state of repair and depreciation. It was not productive of any appreciable net income; and was situated in a section where property had long been decreasing in value. Sur-

rounding circumstances presented little or no prospect of any future increase. It had been devised, under the last will of Luther Sheldon, Sr., probated in 1929, to his daughter, Mrs. J. Louise Wesley, for her life, with remainder to the grandchildren of the testator.

Mrs. Wesley is fifty-nine years old and childless; but she has two brothers, who have five children. Four of the five children, the grandchildren of the testator, are adults, the other being an infant under fourteen years of age.

On account of the location and condition of the property, the life tenant and the adult remaindermen had been anxious to sell it. Messrs. E. S. Ruffin and Sons, attorneys, had had charge of the property for the owners for several years, with Robert D. Ruffin, a member of that firm, giving his particular attention to its management.

Ash, on October 30, 1939, submitted an offer of $4,000 for the property to Ruffin and Sons, acting for the owners. His offer was rejected; but he was advised that the owners would consider an offer around $5,000.

Thereupon, on November 6th, Ash made a second offer of $5,250. On the same day, he signed a written contract of sale and purchase with the life tenant and E. S. Ruffin, attorney, for $5,250. The contract bore a notation that the sale was "subject to confirmation by court".

In pursuance of the offer and contract of Ash for the purchase of the property, Mrs. Wesley, by her attorneys, Ruffin and Sons, instituted this proceeding, under Virginia Code, 1936, section 5161, against the adult and infant remaindermen, and all other grandchildren of Luther Sheldon, Sr., as parties unknown, or yet to be born. The bill set forth the facts as to the property, the offer of Ash to purchase it and the fact that the price was fair and the sale in the interest of all persons interested in the property. All the adult remaindermen answered, approving the sale to Ash for $5,250. John B. Jenkins, Jr., who was appointed guardian *ad litem* for

the living infant remainderman and such as might be born, filed the usual formal answer submitting the interest of the infant to the protection of the court.

The circuit court, by decree entered November 24, 1939, referred the cause to a commissioner in chancery to make the usual inquiries, and especially to advise the court as to the value of the property and whether the written offer of Ash "filed with the papers in this cause, should be accepted." The commissioner had a full hearing on December 5th, taking the testimony in the presence of the attorney for all adult owners and the guardian *ad litem*. The evidence indisputably showed that the property was so located and in such condition that it was not worth over $4,500, and that the sale to Ash for $5,250 would be most advantageous to its owners.

On the same day, after the evidence was taken, but before the commissioner had written his report, Louis B. Fine made a written offer to Robert D. Ruffin, to buy in the property for $5,500 cash, subject to the approval of the court in the proceedings pending for its sale. At the same time, Fine told Ruffin that he "would not pay a nickel more." Ruffin informed Ash of Fine's offer, and Ash, on December 6th, responded by making a written offer of $5,525, cash, subject to the terms and conditions of his former offer.

Robert D. Ruffin promptly reported the offers of Fine and Ash to the commissioner in chancery and to the guardian *ad litem*.

On December 8th, Ruffin, the commissioner and the guardian *ad litem* met at the office of the commissioner and discussed both offers and the advisability of giving Fine any further notice. All three agreed that, under the circumstances, it was not necessary to give Fine any further notice; and that, inasmuch as the offer of Ash was in excess of what the property was worth, the interest of all the parties, including the infant, would be best served by asking for a confirmation of the sale to Ash upon his last bid. The guardian *ad litem* expressed

himself as fearing that Ash might withdraw his offer before acceptance, if he learned that it was being traded upon for a higher offer.

On the same day, all the adult owners filed a petition reciting the offers of Ash and Fine and praying that the sale be made to Ash. The guardian *ad litem* likewise filed a mere formal answer to this petition intrusting the interest of the infant to the protection of the court. The court immediately entered its decree, referring the new matter to the commissioner in chancery.

The commissioner, on December 9th, filed his report, together with the supporting evidence. He recommended that the offer of Ash for $5,525 be accepted as promotive of the interest of the remaindermen in being and of those that might be thereafter born, and as without injury to the interest of any party.

The court, on the same day, December 9th, in its decree brought on to be heard, ''by consent of all parties'' confirmed the report in detail, expressly accepted the offer of Ash, appointed Robert D. Ruffin special commissioner, and directed him to make a deed to Ash for the property, upon the payment of $5,525, in cash. There were no exceptions to the commissioner's report nor any objections to the decree.

December 9th was the last day of the November, 1939, term of the court. The decree of that date was not revoked or altered during that term, nor has any appeal been prayed therefrom.

On December 14th, in the December term of the court, the guardian *ad litem* filed a petition praying that the decree entered in the preceding term, on December 9th, directing the conveyance to Ash, should be vacated and the property sold at public auction. In a supporting note it was stated that Fine, acting for an undisclosed principal, had made a further offer of $5,700 for the property, subject to the approval of the court. The new offer in writing, dated December 13th, was attached thereto.

The adult owners answered, expressing their unwilling-

ness to join in the prayer of the petition of the guardian *ad litem*, and left the decision of the matter to the discretion of the court.

On December 18th, Fine filed a petition and exceptions to the report of the Commissioner confirmed by the decree of December 9th. He alleged that on December 11th, he had received a letter from Robert D. Ruffin, stating that Ash was the successful purchaser; that this was his first notice to that effect; and that he was ready to offer more than the bid of Ash. He further alleged that he had not been notified of any hearing, any additional offer, or the filing of the report of the commissioner, and that he had not been given an opportunity to be heard.

On December 27th, all of the adult owners, Ash, by counsel, Fine and the guardian *ad litem* appeared before the court, and evidence was taken *ore tenus* on the petitions of Fine and the guardian *ad litem*. Ash contended that the decree of December 9th was a final decree and that, even if it were not, it ought not to be altered, and offered immediately to pay the purchase price offered by him.

The trial court by decree of December 27th, set aside and vacated the decree of December 9th, and directed Robert D. Ruffin, special commissioner, to advertise the real estate for sale at public auction, at which sale he should receive no bid for less than $5,700, that being the last offer made by Fine.

We are required to determine whether the court erred in entering the decree of December 27th. In determining this question, it is necessary to decide whether the decree of December 9th was a final decree binding Ash, the interested parties and the trial court.

The defendants in error, in their argument, expressly disclaim any charges of fraud or collusion.

The guardian *ad litem* contends that the offer of Ash to purchase the property did not constitute a binding contract for the sale of the real estate, in that it was not submitted to the court nor to any officer of the court; that

Ash was not a party to the suit nor within the control of the court as a purchaser; and that the court had the right, at any time before the special commissioner of sale had received the sum of money or delivered the deed, to vacate and annul the decree directing the sale and conveyance. He relies upon the cases of *Tulin* v. *Johnston, et al.*, 152 Va. 587, 147 S. E. 206, and *Ferebee* v. *Todd, et als.*, 154 Va. 293, 153 S. E. 705.

An examination of the two cited cases shows that they are not apposite to the instant case either in the form of procedure or upon the facts. Both of those cases were suits for specific performance based upon offers alleged to have been made by prospective purchasers of real property involved in partition suits.

In *Tulin* v. *Johnston, et al., supra,* Tulin made a contract with an agent of the estate of Mrs. Mary E. Johnston, deceased, to purchase the property of the deceased. At the time the contract was made, the property was not owned by the estate of Mrs. Johnston, but by her children and grandchildren, some of whom were infants. A suit for partition between the owners, to which Tulin was not a party, was thereafter instituted. There was no evidence that Tulin had any notice or knowledge of the partition suit, or that he made any offer to buy the property under its decrees. He declined to accept the deed tendered him by the special commissioners in that suit. Thereupon suit for specific performance was instituted against him. Specific performance was denied and the bill dismissed on the ground that there was no mutuality of contract which bound Tulin to purchase the property. In the opinion, the court used the following expression, which is peculiarly appropriate to the instant case [152 Va. 587, 147 S. E. 208]:

"Of course, if at the time of the agreement Tulin had been told of the necessity for the partition suit, or if in the partition suit Tulin had made an offer to the court to buy the property and the court had directed acceptance of his bid and confirmed the sale, the purchaser

would doubtless have been bound and would have received a good title."

In *Ferebee* v. *Todd, et als., supra,* it appeared that Ferebee had made an offer to a real estate agent to purchase property in which infants had an interest. However, prior to the institution of a partition suit to secure a sale or partition of the property, Ferebee withdrew his offer. The trial court dismissed a rule sued out therein against Ferebee to show cause why judgment should not be entered against him for the amount of his alleged offer, upon the ground that the proposed purchaser was not within the control of the court, or a party to the suit. In the suit for specific performance, the infants were not made parties, and the court held that the contract lacked mutuality, and that Ferebee, at any time prior to the court's acceptance of his offer, had a right to withdraw that offer. Specific performance was denied.

The facts in the instant case are strikingly dissimilar to the facts in both of the above cases. Here, Ash, with full knowledge that a suit was necessary to effect a sale of the property, because of the interest of an infant, made a written offer of purchase to the person who represented the owners. He knew that it was essential to a sale to him that his offer be approved by the court, and necessarily, to secure such approval, that the offer be first submitted to the court.

The initiation of the proceedings was based upon the offer of Ash, as stated in the bill of complaint. His first offer and his subsequent offer, in each instance accompanied by a cash deposit, were made known to the commissioner in chancery and to the court. The decree of reference of November 24th, included a direction to the special commissioner to inquire and advise the court "as to whether the offer of $5,250.00 made by J. W. Ash for said property, and filed with the papers in this cause, should be accepted." Likewise, the decree of December 8th, recited the offers of Ash and Fine, and directed the

commissioner to ascertain and report which, if either, should be accepted.

Thus, it here appears that Ash knowingly made both of his offers with the full purpose and intention of having them presented to the trial court for acceptance, and they were, in fact, so presented to the commissioner in chancery, an agency of the court, and to the court itself. He, being directly responsible for the suit as a bidder and purchaser, subject to the approval of the court, made himself a quasi-party thereto.

The decree of December 9th, disposed of the whole subject, so far as Ash was concerned, and gave all the relief that was contemplated when the suit was instituted. It completely provided for the effect of its judgment and left nothing to be done in the cause, save the ministerial superintendence of the execution of its terms. After the court's acceptance of Ash's offer, he was bound to take the property in accordance with the terms of that acceptance. The decree was final, and from it no appeal was taken. *Stowe* v. *Rison*, 152 Va. 842, 148 S. E. 687; Lile's Equity Pleading and Practice, 1916, sections 151, 152.

Fine, on his part, contends in addition, that the action of the chancellor in vacating the decree of December 9th was right and proper because the sale thereby confirmed was inequitable, unjust and unfair. He complains of the lack of notice under the circumstances recited. His contention causes us little trouble.

When Fine told Ruffin on December 5th, that he would not pay a nickel more than his offer of $5,500, he made no qualification of that statement. Ruffin took him at his word, as he had a right to do, and accordingly reported Fine's bid and his statement to the commissioner and the guardian *ad litem*. All of these persons and the court were justified in believing that Fine meant what he said. Neither Ruffin nor the court were required to solicit him to again bid after his positive statement that he would pay no more than he had already

offered. Fine, in the exercise of his discretion as to the price he was willing to pay, voluntarily eliminated himself as being interested in any price beyond that amount.

The conclusion we have reached disposes of the necessity to consider the effect of any upset bid by Fine. According to the evidence, the property brought all that it was worth and more, its sale price being at least $25 more than Fine had said that he would pay for it. Although it is not material upon any issue involved, it is interesting to observe that the increase of $175 in the subsequent offer of Fine meant an increase of less than $20 for the infant remainderman.

For the foregoing reasons, the decree of the circuit court entered on December 27, 1939, is reversed and annulled, and the decree of December 9th, directing a sale and conveyance of the property in question to Ash, upon the terms and conditions therein contained, is reinstated in full force and effect. This cause is remanded to the trial court for such further proceedings as may be necessary and proper in accordance with the views herein expressed.

*Reversed and remanded.*