# Richmond

WALTER M. BOTT v. MARY FRANCES WHEELER AND
H. BRUCE WHEELER.

March 5, 1945.

Record No. 2860.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*Louis B. Fine*, for the defendants in error.

BROWNING, J., delivered the opinion of the court.

This case grows out of a transaction which involved an option to purchase the real estate owned and operated as a drug business by the defendants in error, who were the plaintiffs in the trial court, and the fixtures and stock of drugs therein.

We quote the option:

"In consideration of the sum of One Dollar ($1.00), the receipt of which is hereby acknowledged, the undersigned hereby give to W. M. Bott or his assigns, an option for thirty (30) days to buy the following described property, at the sum named below and on terms as hereinafter stated. The property consists of Lots No. 2 and No. 3, Block No. 1, Plat of Fairmount Park in the City of Norfolk, Virginia, and known, according to the present system of numbering, as 3000 Lafayette Boulevard, to be sold to said W. M. Bott or his assigns at the price of Eight Thousand Dollars ($8,000.00), terms to be cash, or if said W. M. Bott or his assigns should elect to assume present mortgage on the property, he may have the privilege to do so, the above amount less 5% Real Estate Commission.

"We hereby agree to sell stock and fixtures while contained at the above numbered address at inventory, or on a fair appraised value basis. The said W. M. Bott or his assigns is to have an option of thirty (30) days in which to dispose of the said stock and fixtures. If, at the expiration of the thirty days, the said stock and fixtures are not purchased or sold by W. M. Bott or his assigns, this entire option shall become null and void.

"This option expires on August 5th, 1943."

This paper was signed by both the plaintiff in error and the defendants in error. It is manifest from its terms that its date was July the 5th, 1943, and from the evidence it is conceded.

The plaintiffs instituted an action by notice of motion for judgment against the defendant for damages alleged to have been consequent from his failure to purchase the stock of goods mentioned in the option. This so confines the matter that we are not concerned with the real estate or the fixtures, except to the extent that the provisions of the option as to them, and the evidence in connection therewith, may shed light upon the narrowed issue.

The jury rendered a verdict for the plaintiffs in the sum of $1,057.27 which was confirmed by the court.

The evidence, in accordance with the accepted rule of this court, must be viewed in the light most favorable to the plaintiffs.

As we have seen the option was dated July 5, 1943. The defendant exercised his right under it to purchase the real estate which was consummated on July 16th. He did not take advantage of his rights as to the stock and fixtures. It will be noted that the option ran 30 days. It expired August 5, 1943. Under its terms it would have become null and void but the plaintiffs annulled or negatived the effect of this provision by selling and conveying to the defendant the real estate on the 17th of July.

The action was instituted on the theory that the defendant agreed orally to purchase the stock. This position is weakened by the fact that the plaintiffs sold the fixtures and a

part of the stock in July, subsequent to the date of the option, to a Mr. Georges. They delayed the delivery, however, to him, until the 16th of August following. He testified that their reason for this delay was that they had sold the patent medicines and the purchaser had not taken them out. As this statement was not denied, due weight must be given to it. Mrs. Wheeler, one of the plaintiffs, testified that the defendant said that he would fulfill his contract and take the stock at the inventory price and give her two weeks to make the inventory. This was denied by the defendant but in accordance with the rule referred to Mrs. Wheeler's version of the matter would have to be accepted unless her testimony be discredited inherently or in its relation to other established facts. Her testimony with reference to the option, its contents, and its execution, justifies the statement that it is so contradictory, so indefinite, and so erroneous, as to make it almost wholly unreliable. First, she denied executing the option, although admitting that her signature and that of her husband were genuine. She said that the option contained substantial matter that was not in the one which she and her husband executed but was unable to point out what the omitted parts were or what additions, if any, had been written into it after it was signed, and she failed to produce any other paper of like nature. She denied that the paper which they signed was an option but stated that it was a contract of positive purchase. We do not intimate that Mrs. Wheeler intended to falsify but she seemed up in the air about the whole thing.

This doubtless came of anxiousness to dispose of the property, due to the impaired health of her husband, and her desire to get him away from business worries.

It must be borne in mind that the burden of proving the alleged oral contract was upon the Wheelers. Their failure in this respect would defeat a recovery.

Mrs. Wheeler was the active one of the owners in effecting this transaction. She appeared to have charge and control of the property and she conferred with Mr. Bott and other purchasers and prospective purchasers as to its disposi-

tion and we are emboldened to say that her own testimony does not sustain her contention.

All through the month of July she was trying to sell the stock to whom she could. She actually sold a portion of it to Mr. Georges and she definitely sold the residue to Dr. Greene who drew his check on the 25th of July for the amount of the purchase money and made an engagement with her to close the deal, but upon the advice of her husband, who thought the price inadequate, it failed to go through. In relation to this, the witness, Martin Freeney, testified:

"Sometime after Mrs. Wheeler called me and stated that she had sold the stock for $775.00, and asked if I would draw a receipt for it, and I told her I would be glad to do it. She sent down and got the receipt and took it away. * * * She was selling everything except the fixtures, which I understood she had sold to someone else."

The paper which the witness called a "receipt" was a bill of sale as well and it appears in the record as Exhibit No. 3.

This evidence is not contradicted and it is wholly irreconcilable with the subsequent contention that Mr. Bott by oral agreement purchased the stock.

Why was Mrs. Wheeler selling Mr. Bott's property? It is inconceivable.

Mrs. Wheeler admitted that for the purpose of selling the stock she contacted Mr. Berlin, Mr. Zedd, Mr. Settle and others and this after she had conveyed the real estate to Mr. Bott. Dr. Greene's testimony is corroborative of the facts we have stated, in connection with him.

In the face of these facts the claim for recovery must fail. There is no legal basis upon which the action can rest. Let us further say that even if the Wheelers' contention, that Botts agreed to take the stock was sustained, it would not avail them, for nowhere is it shown that they agreed to sell to him. The thing lacked mutuality and no other consideration is attempted to be shown. It is a striking illustration of *nudum pactum.*

In the case of *Ferebee* v. *Todd,* 154 Va. 293, 303,

153 S. E. 705, which is quite illuminating, we quoted from the opinion in the case of *Tulin* v. *Johnston,* 152 Va. 587, 147 S. E. 206, 208, which in turn cited *Freeman* v. *Fishman,* 245 Mass. 222, 139 N. E. 846, wherein it was said: "As is commonly said: There must be mutuality of obligation, or the court refuses to interfere."

We think the trial court should have sustained the motion to set aside the verdict of the jury, and render final judgment for the defendant. We do this now.

*Reversed and final judgment.*