# CHARLESTON.

## L. N. FRANTZ *et als.* v. SUSIE LESTER *et als.*

Submitted April 16, 1918.    Decided April 23, 1918.

1. GUARDIAN AND WARD—*Sale of Realty—Void Deed.*

   A sale of the real estate of an infant made in a summary proceeding authorized by sections 12 to 17, inclusive, of ch. 83 of the Code, at the instance of a person claiming to be his guardian and acting as such, but whose appointment and qualification, if any, were not recorded nor otherwise evidenced by any writing, at the time, upon a petition averring his due and legal appointment and qualification, is irregular and voidable, but not void. (p. 331).

2. SAME—*Voidable Sale—Ratification—Petition of Guardian.*

   Under said statutory provisions, the court in which such a sale has been made has power and jurisdiction to ratify and confirm it, upon a bill filed for the purpose, by the person upon whose petition it was made, upon his having subsequently qualified under a due and regular appointment as guardian for the infant; and, if the sale is proved upon such bill to have been necessary to the welfare of the infant, fair, reasonable, just and advantageous to his interests, it is the duty of such court to ratify and confirm it. (p. 333).

3. SAME—*Sale—Validity—Purchased by Judge of Court Ordering Sale.*

   A purchase of an interest in part of the land so sold, by the judge of the court in which the proceeding was instituted, does not invalidate the sale, if the sale was authorized, ordered and confirmed by special judges, in his absence from the court, nor is it sufficient ground or cause for denial of ratification and confirmation thereof, upon a bill properly filed therefor. (p. 334).

4. JUDGES—*Powers—Interest.*

   A judge interested in the subject matter of litigation pending in his court is competent to enter merely preliminary and formal orders in the cause. (p. 334).

Appeal from Circuit Court, Wayne County.

Bill of review in the nature of an original bill by L. N. Frantz and others against Susie Lester and others, with answer in the nature of a cross-bill. Decree for defendants, and plaintiffs appeal.

*Reversed and remanded.*

*M. P. Howard, E. W. Worrell, T. N. Read,* and *Sanders, Crockett & Kee,* for appellants.

*Marcum & Marcum,* for appellees.

POFFENBARGER, PRESIDENT:

The decree brought up by this appeal disposes of issues raised by a bill of review in the nature of an original bill and an answer in the nature of a cross-bill, adversly to the claims and interest of the plaintiff in the bill of review and numerous other persons similarly situated, and favorably to the interests and claims of the cross-bill plaintiffs. The numerous appellants are claimants of title to several parcels of real estate sold and conveyed as the property of infants, under summary proceedings instituted by their mother, acting as their guardian, pursuant to the provisions of sections 12 to 17, of chapter 83 of the Code. If, at the dates of the sales, the mother had been appointed guardian of the infants, no record of her appointment had been made in compliance with the requirements of law. This defect having been discovered, long after the sales had been made, she caused herself to be regularly appointed guardian and then filed her bill praying confirmation of the sales, making the purchasers parties thereto, which bill was dismissed on final hearing. Part of the land had been sold and conveyed to a trustee, and a purchaser from him filed this bill for review of the decree of dismissal and for relief upon all the facts and circumstances disclosed, styling it a bill of review in the nature of an original bill, and making all interested persons parties thereto, including the infants. Seven of the infants demurred to the bill, and filed a joint and separate answer praying annullment of all the decrees of sale and the deeds made thereunder. The decree appealed from granted the relief prayed for in the cross-bill answer.

By her petition filed in the Circuit Court of Wyoming County, May 24, 1909, Millia Lester, widow of Elisha Lester, representing herself to be the guardian of their nine infant children, averred that said Elisha Lester had died seized and possessed of nine separate parcels of real estate, but that the children had no estate except their interests in the land, that

she had no means for their support and education and that she believed it would be to their interests to have the land sold and the proceeds thereof applied to their support and maintenance. Guardians *ad litem* were appointed and parcels Nos. 3, 5 and 7 were sold to Levi Lusk, as guardian and in his own right, Drucilla Lusk, and others, for the sum of $4,000.00. This sale was confirmed and the property conveyed to the Lusks, and, by the decree confirming it and directing a conveyance, the guardian was authorized and empowered to invest about $3,000.00 of the proceeds of the sale in a tract of land containing 42½ acres, known in this record as Skin Fork Land, then owned by Levi Lusk and others, the same persons to whom the Lester property was sold. By a decree entered, March 10, 1910, the sale of two town lots to D. D. Moran at the price of $300.00 each was authorized, and they were sold and the sale confirmed and a deed executed. By a decree entered by special judge J. J. Swope, November 1, 1910, sale of parcel No. 2, was authorized, and, by a decree entered by special judge Marvin T. Bowman, November 28, 1910, a report of a contract of a sale thereof to E. W. Worrell, Trustee, was received and filed, and, on the next day, the same special judge being on the bench, the sale was· confirmed and the execution of a deed authorized. In the same order, the guardian was authorized to invest $3,000.00 of the proceeds of the sale, the cash payment, in a tract of land in Wayne County, containing 133 acres and known as the James P. Billups farm. The guardian filed her petition, November 1, 1910, for permission and authority to sell the Skin Fork tract of land, obtained from Levi Lusk and others, and sale thereof, at $50.00 per acre, to E. E. Cook, was authorized and finally consummated. A portion of the proceeds of this sale was invested in the Wayne County farm, under permission granted by the court. The quantity of the Lusk tract of land turned out, on a re-survey, to be 69.89 acres, making the proceeds of the sale thereof nearly $3,-500.00.

L. N. Frantz, the plaintiff in the bill of review in the nature of an original bill, claims title under E. W. Worrell, trustee, the purchaser of parcel No. 2, containing 28.69 acres,

after elimination from the area of the tract, as defined by its boundaries, portions of the bed of the Guyandotte River and certain railroad rights of way. Worrell took the title for himself, J. Wellman, Harvey Ewart, M. P. Howard and James H. Miller. They seem to have divided the tract, or a portion of it, into town lots, and Ewart and Worrell, trustee, by their deed dated, November 1, 1912, conveyed to Frantz a portion thereof, describing it as Lot No. 27 in section D of the town of Welton. By another deed dated, April 1, 1912, they conveyed to George W. Graham Lot No. 17 in Block C. of said town. Moran conveyed to Henry L. Thurman the Lots he purchased from the guardian and Thurman conveyed them to Grover C. Worrell.

The bill of Millia Lester alleges her verbal appointment as guardian to have been made by A. M. Stewart, clerk of the County Court of Wyoming County, in the month of March 1909, and her qualification in pursuance of the appointment. It also charges the failure of the clerk, by oversight, to make any memorandum of the appointment and qualification and to report the same to the court for confirmation. The bill in this cause repeats the allegation and attributes the failure of the clerk to record and report the appointment and qualification, to his sudden death thereafter. Mrs. Lester was duly appointed by another clerk of the County Court of said county, April 8, 1914, her appointment was confirmed by the court, June 18, 1914, and she brought her suit to have the sales validated or confirmed, May 24, 1914. The cause was matured and heard and a decree of dismissal entered July 14, 1914. The process on this bill of review was issued, January 30, 1915.

The decree dismissing the bill of Millia Lester is based upon the application of the rule of strict construction, to the statute authorizing sales of the real estate of infants, and it is fully sustained by some decisions rendered in other jurisdictions. *Higginbotham* v. *Thomas,* 9 Kan. 328; *Harrison* v. *Miller,* 123 Pac. Rep. 854; *Dickey* v. *Beatty,* 14 O. 389; *Young* v. *Dowling,* 15 Ill. 482. But, in this state, the statute has always been held to be remedial in character and liberally construed. *Faulkner* v. *Davis,* 18 Gratt. 651, 669.

In *Garland* v. *Loving,* 1 Rand. 396, the court asserted the existence of judicial power, under the statute, to ratify and confirm a sale of real estate of infants already made without authority, upon finding it to have been reasonable, fair, just and clearly advantageous to the infants. Loving had conveyed his real estate to trustees for the support of himself and his wife and children, and, after his death, for the children in fee. Lofftus having offered $10,000.00 for the property, Garland and Whitehead, guardians of the children of Loving, and the trustees accepted the offer and filed their bill and an amended bill in equity, praying ratification of the· contract of sale. These bills were dismissed and, on an appeal, it was held that the trial court had the power to ratify and confirm the sale, although made without any authority, as regarded the estates of the infants. Mason and Vaughn were equal owners of property in Richmond. They entered into an agreement reciting their ownership and the probability of causes for sale thereof, due to death or other circumstances, and providing for mutual and reciprocal options of purchase, as conditions precedent to the right to make individual sales of their interests and for effectuation of the agreement by their executors or administrators, in case of death. An endorsement upon the agreement provided for a public sale to the highest bidder, after sufficient notice, in case either of the parties should wish the premises sold, and not want to make an offer of purchase, after rejection of his offer of sale. Vaughn having died, Mason procured a sale to be made to Goddin, by an auctioneer, and the purchaser refused to comply with his contract, because he doubted the validity of the sale as to the interests of the Vaughn heirs. Upon a bill filed by the executrix of the will of Vaughn, the court decreed specific performance of the contract, after having ratified Mason's sale of the property including the interests of the heirs of Vaughn. *Goddin* v. *Vaughn's Ex'x.,* 14 Gratt. 102. It is to be remembered that Vaughn's agreement to a sale by Mason was conditional. He had the right to keep his property, by purchase of the interest of Mason. This right descended to his heirs, wherefore it cannot be said the agreement between Vaughn and Mason extinguished the

Vaughn estate or prevented the beneficial interest therein from descending to the heirs. They had the right to buy as well as to sell. In the opinion delivered, the court reaffirmed and applied the doctrine enunciated in *Garland* v. *Loving,* saying it had been decided in that case ''That if the court should be satisfied the interest of the infants manifestly required a sale, and that the one that had been made was advantageous to them, it might confirm it instead of requiring a new sale to be made under its decree.'' In neither of these cases had there been a perfect sale. In the former, the guardians had made a sale without any authority. In the latter, there had been no sale by the guardian. He merely joined in the bill of the executrix, for ratification and enforcement of the sale made by Mason. Further applications of the doctrine will be found in *Daniel* v. *Leitch,* 13 Gratt. 195 and *Faulkner* v. *Davis,* cited.

Upon the bill of Mrs. Lester, full and clear proof of the necessity of the sales and their advantageous character as regards the interest of the infants, was submitted and neither of the hypotheses was in any way controverted or questioned. At that time, about four years after the sales, it clearly appeared that the town lots sold and the Skin Fork tract of land were not worth any more, respectively, than the prices obtained for them. The other tract purchased by Worrell, trustee, was not well suited to agricultural uses or any other immediately productive purpose, and its value was largely dependent upon the commercial and industrial growth and development of the community in which it was situated. It lay about three miles distant from the town of Mullens, consisted of hill-sides and small tracts of bottom land and was cut into at least four parcels by the Guyandotte River. The Skin Fork tract of land lay about fifteen miles from the nearest railway station. The Wayne County farm in which proceeds of the sales were invested was nearly all cleared, well improved, in a good state of cultivation and situated near a railroad.

Only one circumstance is relied upon as tending to prove inadequacy of price or disparity in values and that pertains to the lots practically traded to the Lusks for the Skin Creek

farm. Though Lusk testified he had offered to take $2,500.00 for the farm, he testified in equally positive terms, that he had offered to take the same amount for the town lots. Considered in the light of the fact that Mrs. Lester soon afterwards sold the former for more than $3,500.00 and lack of proof that the town lots were really worth more than $2,500.00, this testimony is wholly insufficient to disprove an advantageous sale and purchase or exchange, whichever it may have been.

Two circumstances are pointed out as tending to cast imputations upon the good faith of the transactions, the judge's interest in the sale to Worrell and the encouragement of the sales by other persons, two of whom became interested in the sale. The judge of the court did not preside at the entry of any of the orders of sale and confirmation, relating to the tract in which he became interested. On these occasions, the court was presided over by special judges elected by members of the bar. An interested judge may properly enter preliminary and formal orders necessary to the maturing of the cause, such as the filing of the petition and the appointment of a guardian *ad litem* in these proceedings. *Findley* v. *Smith,* 42 W. Va. 299. Although made upon a single petition, the several sales were separate and independent, each standing upon its own facts and circumstances for legal justification. In the proceedings heard by the regular judge, he had no occasion to consider or pass upon those set up as ground for sale of the tract in which he became interested. Moreover, he testifies positively that he had no interest in the tract, until perhaps a year after the sale had been made. Since all of the sales were made for adequate considerations and were clearly advantageous to the infants, it is immaterial that Ball, Wellman and Cook rendered the widow assistance in the disposition of the property. In all of these transactions she had the advice and protection of other friends, her counsel, the guardian *ad litem* and disinterested judges.

The conclusion foreshadowed by the observation here made does not proceed upon the theory of absolute invalidity of the decrees in question. That they are merely voidable necessarily results from their susceptibility of ratification by the

acquiescence of the infants, with full knowledge of all the
facts, after having obtained their majorities.    That would
bind them.    *Scott* v. *Freeland,* 7 Sm. & M. 409; *Schur* v.
*Schwartz,* 120 Pa. St. 53; *Brazee* v. *Schofield,* 122 U. S. 495.
The collateral nature of the defect makes it a mere irregular-
ity in procedure, inefficacious to render the decrees wholly
void.    Though it did not disclose the manner of her appoint-
ment, the petition represented Millia Lester to be, the guar-
dian of the children naming all of them.    It alleged that on
the ......... day of December, 1907, she had been duly and
legally appointed guardian and had qualified and purported
to exhibit a duly certified copy of the appointment.    If ap-
pointed by Stewart at all, the date of the appointment is
shown by the evidence to have been in March, 1909.    In the
absence of a demurrer this was a sufficient allegation of her
status and capacity as guardian.    *Jacobs* v. *Williams,* 67 W.
Va. 377; *Gartin Coal Co.,* 72 W. Va. 405.    Failure to prove
an allegation does not render void a judgment or decree
founded thereon.    "Although a purchaser at a judicial sale
may be required to see to the regularity of the proceedings
upon which the jurisdiction of the court is founded, he is
not bound to investigate the truth of the matters stated in
the bill and deposed to by the witnesses touching the estate
owned by the infant.    The title cannot be affected because the
case made by the record happens not to be warranted by
the facts."    *Durrett* v. *Davis,* 24 Gratt. 302, 308.    Under the
statute, the court does not merely grant a general authority
or power to the guardian, to sell the real estate of the ward.
It makes the sale itself through the guardian acting as its
agent, or otherwise, and adopts adequate measures prescribed
by the statute, for preservation of the fund arising there-
from.    The guardian seems to be vested with the sole power
of initiation, but in all other respects the court is in full con-
trol of the proceeding.    There is a cause of action, whenever
the interests of the ward require a sale.    In this respect, a
proceeding of this kind erroneously initiated is unlike the
proceedings in *Hull* v. *Hull,* 26 W. Va. 1, and *Miller* v.
*Hoback,* 44 W. Va. 635, in neither of which was there a pos-
sible cause of action of the kind alleged, wherefore the lack

of jurisdiction appeared on the face of the record. Here there was an apparent jurisdiction, the court was one of general jurisdiction and it carried its powers, not those of the petitioner, into execution. Such a decree cannot be collaterally assailed, and one that cannot be wholly disregarded is not absolutely void. *St. Lawrence etc. Co.* v. *Holt and Mathews,* 51 W. Va. 352; *Tomblin* v. *Peck,* 73 W. Va. 336; *Durrett* v. *Davis,* 24 Gratt. 302, 316; *Fisher* v. *Bassett,* 9 Leigh 119.

For the reasons stated, the decree entered in this cause, Aug. 28, 1917, and the decree entered in the chancery cause of *Millia Lester, guardian* v. *Levi Lusk et al.* July 14, 1914, will be reversed, and a decree entered here, ratifying and confirming the said several sales made under the decrees in the summary proceedings mentioned and described in the bills and proceedings in said two causes and awarding the costs in this court to the appellants against Susie, John C., Lillie B., Amoris, William, Augusta and Ida May Lester; and this cause will be remanded for such further proceedings as may be necessary to full effectuation of the rights of the purchasers in said sales, as herein ascertained and declared.

*Reversed and remanded.*