# CHARLESTON.

GROVER C. WORRELL *v.* LEVI LUSK.

Submitted March 1, 1921.    Decided March 8, 1921.

1.  RECEIVERS—*Equity Has Jurisdiction to Determine Title to
    Fund Placed in Hands of General Receiver in Action at
    Law.*

    There is jurisdiction in a court of equity to determine the
    title to a fund placed in the hands of its general receiver, by
    an order entered in an action at law, to await and abide de-
    termination of the ownership thereof by a suit in equity to
    be brought for that purpose.  (p. 183).

2.  SAME—*General Receiver Holding Funds Pending Determina-
    tion of Ownership in Equity an Informal Party, Though
    Not Joined.*

    In such case, the general receiver, though not named as a
    party in the bill, nor served with process, is an informal party
    to the equity suit.  (p. 183).

3. EMINENT DOMAIN—*Rights to Fund in Hands of General Receiver Determinable by Rules Applicable to Specific Performance of Land Contract.*

If relief is sought in such a bill, on the ground that the fund is part of the compensation for land taken in a condemnation proceeding, which had been previously purchased by the plaintiff from the formal defendant, under an executory contract, the rights of the parties are determinable by the rules and principles governing specific performance of contracts of sale of real property. (p. 183).

4. SAME—*Purchaser Not Entitled to Specific Performance Not Entitled to Compensation Paid Into Court.*

If such a purchaser under a contract allowing reasonable time to abstract the title, make surveys, etc., and providing for consummation upon completion of such work, delayed his election to take the property with or without an abatement from the purchase money, for a period of four or five years to the detriment of the vendor, upon discovery of a serious defect in the title to the property, he would not have been entitled to specific performance of the contract, wherefore he is not entitled to a decree for any part of the money paid into court in the condemnation proceeding as compensation for the land taken. (p. 186).

5. VENDOR AND PURCHASER—*Condemnation of Lands Held Not Performance of Land Contract.*

If, in such case, the condemnor contracted with the vendee for purchase of the land, before commencement of the eminent domain proceeding, and instituted it against both vendee and vendor, upon discovery of the defect in the title, prosecution of such proceeding by the assignee is not performance of an undertaking on the part of the vendee, as part of his contract, to prosecute a summary proceeding under the statute in the name of the vendor, as guardian of infants then having interests in the land, for authority to convey such interests; nor is the taking of the land by condemnation performance of the contract by the vendee or such assignee. (p. 186).

Appeal from Circuit Court, Wyoming County.

Suit by Grover C. Worrell against Levi Lusk. Decree for plaintiff, and defendant appeals.

*Reversed and rendered.*

*J. Albert Toler,* for appellant.

*E. W. Worrell,* for appellee.

POFFENBARGER, JUDGE:

The bill in this cause seeks award to the plaintiff, of a certain sum of money which, at the date of the filing thereof, was in the possession of the general receiver of a court, by virtue of an order of the court, entered in another proceeding, one of condemnation, requiring payment thereof to him and authorizing him to receive it. On a demurrer thereto, lack of jurisdiction in equity is urged. Ground of such jurisdiction is clearly manifest. If the plaintiff is entitled to the specific money he seeks, there is no remedy in a court of law by which he can obtain it. His purpose is not recovery of a judgment or personal decree against the defendant. He asserts right, as against the defendant, to certain money not in his possession or control. If he has made proper parties to his bill, his right to prosecute this suit is clear, for the law court does not afford him an adequate remedy, nor any at all for recovery of the particular fund in controversy. *Yost* v. *Wills,* 86 W. Va. 71.

No necessary party has been omitted, unless the general receiver having the fund in his hands is such. He was not formally made a party, but the bill, treating the fund as being in court, prays for an order directing him to pay it to the plaintiff. From the answer to an amended and supplemental bill which does not show the exact status of the fund, and the evidence, it appears that it was placed in the hands of the general receiver, by an order entered in the condemnation proceeding, to await and abide the result of this suit which had not then been instituted, but was then contemplated and commenced immediately afterward. Hence, the fund, though not originating in nor growing out of this suit, has been validly placed to the credit thereof in the hands of the general receiver. Having received the money under an order of the court, to hold until this controversy is settled by a final decree, and being an officer of the court, he is in court for the purposes of this cause and may be deemed to be an informal party thereto.

The fund is part of the compensation paid by the Virginian Railway Company for four lots taken for its pur-

poses, by a condemnation proceeding against the defendant, Lusk, and others, including the plaintiff who claimed the status of purchaser thereof from Lusk under an executory contract antedating the condemnation suit. At the date of the contract, an option in its inception, Lusk and his wife had estates in the lots for their lives and the former, certain shares in remainder by inheritance from deceased children, all of the children having originally owned the remainder in fee. A sale of the property to the Virginian Railway Company was then contemplated, but could not be consummated without judicial proceedings, on account of the infancy of some of the children. In anticipation of such a sale, after procurement of a judicial order authorizing conveyance of the interests of the infants, the plaintiff and defendant, entered into the optional contract which gave the plaintiff right to purchase the property within 90 days from the date thereof, August 21, 1913, and further provided that an acceptance by notice in writing within such period should convert the option into a contract. It recited purpose to sell the property to the railway company, bound the plaintiff herein to prosecute the suit for authority to convey the interests of the infants, and provided that he should have for his services such amount as should be obtained from the railway company, in excess of $2,800.00. Worrell gave notice of his acceptance, October 1, 1913, after having conditionally contracted a sale of the lots and some other pieces of property, to the railway company, at the price of $5,200.00. The summary proceeding for sale of the interests of the infants, conducted in the name of Lusk, the defendant here, as guardian, was instituted and prosecuted to the point of readiness for submission to the court. Then, on discovery of a serious defect in the title to the lots, which were part of the property involved in *Frantz* v. *Lester,* 82 W. Va. 328, proceedings were suspended. At an earlier date, it seems, the railway company's acceptance was so modified, or it may have been originally so qualified, that it took one of the pieces of property, other than the Lusk lots, at $1,000.00 and fixed the price of the Lusk lots at $3,500.00. After discovery of the defect, a condemnation proceeding was commenced to

obtain the title to the Lusk lots.    This proceeding was continued and carried along until the title of Lusk was validated by the decision in *Frantz* v. *Lester,* when, by agreement, the compensation was fixed at $4,500.00 which sum was paid into court.    Then the plaintiff herein demanded $1,700.00 thereof, the excess over $2,800.00.    This demand being resisted by Lusk, the court ordered said sum paid to its general receiver as aforesaid.    In the mean time, Lusk's wife had died and, by a partition and conveyances, he had acquired complete title to the four lots.

Finding for the plaintiff on all issues as to the existence of the contract and its terms and conditions, the court entered a decree in this cause, awarding the plaintiff $700.00 of the amount in controversy, on the theory of his having contracted a sale of the property to the railway company at the price of $3,500.00, and his right to the difference between that sum and $2,800.00.    Both parties complain of the decree, Lusk by this appeal and Worrell, by a cross-assignment of error, based on disallowance of his claim to $1,000.00 of the fund.

Although the plaintiff contracted a sale of the lots to the railway company, at the price of $3,500.00, neither he nor the railway company would pay the money and accept such title as the defendant was then able to convey.    This he admits in his testimony, but he insists that the contract binding the defendant to convey good title subsisted pending the proceedings for perfection of title, which was accomplished by the condemnation suit, or the decision in *Frantz* v. *Lester.* Until the latter suit was decided, nothing was finally or irrevocably settled.    When the title was found to be good the property went to the railway company, not by virtue of the contract only, nor at the price previously agreed upon, but by virtue of an adjudication based upon a new agreement as to the price.

At the date of the contract, no such defect as was later discovered was either known or suspected.    What was foreseen amounted to no more than necessity of a simple and short proceeding for passage of the title of the infant owners.    For

his services in that proceeding the plaintiff was to have the difference between $2,800.00 and the sale price. Although the option after acceptance became a contract, it was not a contract unlimited as to time. It allowed only "a reasonable time to abstract title, make surveys," etc. If it can be said to have been closed at all, as made, it was not closed for a period of more than five and a half years. When the abstract was made, neither the plaintiff nor the railway company was willing to consummate the deal by payment of the money. In the meantime the defendant's situation had undergone a detrimental change. He had bought property in another community, expecting to pay for it out of the purchase money of the lots, and, being unable to do so, had been forced to relinquish his bargain. On his return he denied further liability upon the contract and gave notice of his intention not to be further bound by it. At that time there was no tender of any money and presumptively, the plaintiff would not then have paid the purchase price and accepted a deed, for, as stated, he admits unwillingness to accept anything short of a marketable title.

At the date of the commencement of the condemnation proceeding, the contract was unenforceable, as made, because the defendant's title was deemed to be bad. The defect in it had been adjudged to be fatal. There was only a fighting chance to sustain it. If it had not been validated in *Frantz* v. *Lester*, it would have been void. And the inability of the defendant to convey good title was not due to any fault of his. He was an innocent holder of a bad title, one the vendee would not accept. Under these circumstances, he could not delay election to take such title as the vendor could convey, with an abatement of purchase money, or to take it without an abatement, for a period of four or five years. He was allowed only a reasonable time for such election, and, it not having been made within such time, specific performance of the contract cannot be enforced. *Neill v. McClung,* 71 W. Va. 458.

Nor can this result be avoided on the ground of perfection of title by prosecution of the condemnation suit. That was

no part of the contract and was not within the contemplation of the parties at the time of execution thereof. The service undertaken, as consideration for the advantage in the sale, was not fully performed, nor was the purpose thereof achieved at all. There was no such judicial sale of the interests of the infants, as was contemplated. The excess in price came not from the services of the plaintiff, but as the result of an adverse proceeding by the railway company and delay of consummation until the title was validated by a proceeding not in contemplation at all. Nor did the purchase money come into the hands of the court by virtue of any purchase by the plaintiff or any sale made by him. The railway company paid it as compensation for land taken in the exercise of the power of eminent domain.

Our conclusion is that the decree complained of will have to be reversed and the prayer of the defendant's answer for award to him, of the sum of money in controversy, granted, without prejudice, however, to any right the plaintiff may have to sue for damages for breach of the contract of sale or for compensation for services rendered in the transaction out of which this controversy arose.

Costs in this court as well as in the court below will be decreed to the defendant.

*Reversed and rendered.*