Tucker, P.
If the appellants’ case is to be sustained in this court, I am inclined to think it cannot be on the ground of their having presented themselves as attaching creditors in this suit, or as seeking to become parties to the attachment of Kinney, or as entitled to avail themselves of the naked subpoena which they sued out of the court of chancery of Lynchburg. Their bill assumes not at all the shape of an attachment; nor do they ask to participate in the benefits of Kinney's, upon the usual terms of the court; so that we may throw out of the case the various questions which have been suggested upon these views of the subject. And as to the Lynchburg attachment, whether the original indorsement bn the subpoena was or was not imperfect or inefficient; whether the lien has been preserved by keeping the cause on the docket, or lost for want of prosecution ; certain it is, I think, that we cannot (if I may so speak) splice that case to this, for the purpose of preserving the supposed preference, which the creditors may have obtained, by that process, over Kinney and wife.
*287 But though upon these grounds the creditors have little . . . . . pretensions to success in this case, yet there are others that present much stronger claims to our attention. I shall consider these in succession.
The first of them which I shall notice, refers itself not so much to the merits of the respective pretensions of the parties, as to a question not vital to their interests. Admitting the superiority of the claim of the appellees, it is yet contended, that as they, after all, had only a right to have that claim satisfied, the bill of the creditors should not have been dismissed, until it bad been ascertained by a sale, that there would be no surplus, out of which they could have received payment. Whatever were the comparative merits of the claims of the appellants on the one hand, and of Kinney and wife on the other, the claims of the former against Holloway, have not been seriously contested. If, therefore, the proceeds of sale shall suffice to discharge the demand, or that portion of the demand, of Kinney and wife, which they may have a right to charge upon the land, and a surplus shall remain, there seems no assignable reason, why payment out of such surplus should be refused to the appellants, who stand, as sureties, in the shoes of a creditor whom they have satisfied, and moreover hold the deed of Holloway for the security of their demand : for, whether as representing Warwick, they could overreach Kinney and wife, or whether Kinney and wife were or were not bound by the unrecorded deed of Holloway, he at least was bound and chargeable to the appellants, on either of those grounds. Nor was it an apology for the dismission of the bill, that relief was hopeless, as no surplus was to be expected. Hopeless as it might have been, the result should have been awaited. And, indeed, it ought not to have been considered as hopeless. The decree was for the sale of the whole tract, for the satisfaction of the price of but half of it: and, though no calculation, in judicial proceedings, should have been made on the probability, that the ties of kindred would restrain Kinney from buying in his brother-in-law’s estate *288 at an immense and ruinous sacrifice; yet there was a reasonable ground of hope, that long credits, and a judicious sub-division of the subject, might effect that which the more amiable feelings of our nature might have been appealed to jn vajn t0 bring about. Moreover, if it should appear, that the vendor, Kinney, had a right to a decree only for the amount actually due when his decree was rendered, and not for the deferred instalments, then there was every reason for presuming, that that half of the land which was sold by him, would be more than sufficient for that purpose, and would leave the proper land of Holloway for the indemnity of the appellants. I am of opinion, therefore, that in this regard, the decree of dismission is very clearly erroneous.
It is essential, however, that the court in reversing the decree, should pronounce upon certain other principles in the case, involving the merits of the controversy, in order to its ultimate adjustment. This leads me to consider, and to compare the pretensions of the parties, at least in some important particulars.
• The superiority of the claim of the appellants may be considered, either as arising out of the deed from Holloway to Watts and Kinney, for the benefit of his creditors, or as sustained by the supposed right to stand in the shoes of Warwick, and to charge the lands of their debtor, by virtue of the lien of the judgement which they have paid off and discharged.
First, let us consider their claim under the deed to Watts and Kinney. This deed, though not duly recorded, and therefore not valid as to the creditors of Holloway, is nevertheless binding between the parties themselves. It constitutes a lien, of which, as against Holloway, the appellants had a right to avail themselves. And it is not only valid against him, but it is also valid against all persons, except purchasers without notice or creditors of Holloway. It can only he assailed, then, in this case, upon the ground, that Kinney and wife are either purchasers without notice, or creditors. The former is not pretended. The latter must *289 be examined ; and it brings us to one of the most litigated . . , points in the case.
I will remark, at once, that I do not conceive Kinney or Kinney and wife to be creditors of Holloway, in this regard. A verbal contract having been entered into between Kinney and Holloway, for the sale of the lands of Mrs. Kinney, the parties separated without having reduced the terms of the contract to writing; but with an understanding (to place the facts in the strongest points of view for the vendors) that Holloway, who was already in possession as jointenant should continue to hold the whole tract, one half in his own right as devisee of his uncle, and the other half as purchaser from Kinney and his sister. Waiving the question, whether this continuance of possession constituted part execution, and waiving also the objection arising out of the difference between the parties as to the terms of the parol contract, it is material to remark, that the written contract never was signed by Holloway, the party to be charged with it. Kinney, therefore, never has had any right of action at law against Holloway. If, indeed, the contract had been signed, and the covenants could have been regarded as independent covenants, Kinney might have then maintained an action for the money, notwithstanding a deed had not yet been made and tendered by himself and wife. But, as the contract was not executed, he had no demand whatever at law against Holloway. His demand was only in equity, where the payment of the purchase money never could be enforced until the title was made. Until this was done, he was no creditor in equity: and to this day it has not been done: to this day, for aught wo know, the title is in his wife, or, if she is dead, in her heirs; and if she refuses to make a title, or should die without the due execution of one, the contract is annihilated, both at law and in equity; all pretence of specific performance is extinguished; and the parties are thrown back upon those original rights, which they possessed anteriour to their treaty. How, then, can that be said to be a debt, which is a debt to-day, and to-morrow is *290 none'? which is a debt, in case a wife shall, voluntarily and without the threats of her husband, convey away her own inheritance, and enable him to pocket the money, and no debt if she should decline to do so? How can he be said to be a creditor, whose demand depends upon a contingency which is beyond human ken, since that contingency, in its turn, depends upon the will, not to say the caprice, of a feme covert ? Nay, how can he be said to be a creditor, or his adversary a debtor, when the whim, or caprice, or self interest, of that creditor himself, may make, or may avoid, the contract? Can there be a debt without a contract? Can there be a contract without mutual obligation ? Can there be an agreement between two parties, which binds one of them absolutely, and the other only at his pleasure ? Yet, here the contract between these parties would be binding on one, and not upon the other, if Holloway is to be considered as bound. If from an increased value in the land, or from any other cause, it should be the desire of Kinney to recede, what could .restrain him ? At law, he was not bound, nor is he yet bound for any thing. In equity, he cannot be decreed to pay Holloway damages for the loss of a good bargain, for this is a jurisdiction it does not exercise (Gwillim v. Stone, 14 Ves. 128. Todd v. Gee, 17 Ves. 277.) unless, indeed, in very special circumstances; and as to compelling the husband to procure a conveyance, the doctrine, never well received, has never been acted upon with us, and seems recently to have been discountenanced in England. Emery v. Wase, 8 Ves. 505. 1 New Rep. 267. It is true, that in a recent case it has been said, that if the wife assents the husband will not be permitted to recede. Howell v. George, 1 Madd. Ch. Rep. 1-7. But so easy is it where family convenience and profit concur, for the influence of the husband to withhold the assent of the wife, that, practically, the doctrine can never be of use. Be this as it may, the wife in this case is the essential contracting party, if indeed she is to be called ,a contracting party, who is bound or not bound, at her absolute will and pleasure. *291 Being only thus far bound, the other party cannot have been ° J ’ , ,, bound, and cannot thereiore have been a debtor.
Upon this ground also it is probable, that no specific performance could properly have been decreed, since the want of mutuality in the contract, is generally a valid objection to the exercise of that jurisdiction. 1 Madd. Ch. Prac. ,423, 4. Certain it is, I think, that no decree should have been rendered against the vendee until the vendor had procured and offered in court a deed executed with all proper solemnities to pass the title of the wife; since, otherwise, this solecism is presented, that the decree between the parties is binding or not binding, at the will and pleasure of one of them.
It would be unprofitable to pursue, through all its consequences, this anomalous state of contract. Difficulties and absurdities fasten upon it, whithersoever we turn. Thus, this very decree of dismission, may have been free from error when it was rendered, upon the supposition that Holloway was a debtor of Kinney, for, in that case, the deed of trust was void as to him; yet, if Mrs. Kinney is since dead, or should now refuse to execute the contract, he is no debtor, and the decree is erroneous; for, in that event, he would certainly not be the debtor of Kinney, and therefore the deed of trust would be good against him. A bill for specific performance will lie for Kinney and wife, if they choose to abide by the contract; but Holloway cannot maintain such a bill. If he becomes a suitor for the benefit of it, he cannot compel, he can do no more than solicit. And his shortest course, instead of being suitor to the court, would be to become a suppliant to the lady.
With these views, I have no doubt, that Kinney was no creditor of Holloway, and that the deed of Holloway, though not recorded, was good against him. This view of the subject renders it unnecessary to consider, whether as an attaching creditor, Kinney comes in by act of law, so far as to be within the principle, that he, who takes by act of law, steps only into the shoes of his debtor; and “takes his *292 rights precisely in the same plight and condition, as he possessed them.” “ In such cases even though a complete legal title vests in the party, and there is no notice of any equity.affecting it, he takes subject to all the equity to which his debtor was liable.” This is the doctrine as to assignees of bankrupts, and is broadly stated by sir W. Grant in Mitford v. Mitford, 9 Ves. 100. in reference to all persons coming in by act of law. Whether attachment creditors are so to be considered, and whether the lien of an unrecorded deed would bind the estate in the hands of such persons, are questions not now necessary to be decided.
If the superiority of the rights of the appellants, should not seem clear as arising out of the lien created by the deed of trust, let us next consider it in another light, in which it was presented in the argument at the bar.
It is contended for the appellants, that having as the sureties of Holloway, paid off the judgements obtained by Warwick, they have a right, upon the principles of substitution, to the lien of the judgements upon the land, which has been subsequently attached at the suit of the appellees. The payment indeed was denied in the argument, though not absolutely denied in the answer. I shall take it as a fact in the cause, because alleged by the appellants themselves» whose case would perhaps present itself yet more strongly, if we suppose the judgements not to have been paid. In that view they would be relieved from the force of the argument, that equity will not revive a satisfied judgement, to the prejudice of an incumbrancer having the legal title; and of the other argument, that the taking the deed of trust changed their character of creditors into the less advantageous character of purchasers; an argument, which rests upon a supposed decision of this court in Tate v. Liggat. Moreover, their bill would then be considered, in the light of án application to have the benefit of the judgements assigned them ; or as seeking to have the property sold to pay off the judgements, for which they are responsible; a right which is conceded to a surety, wherever the debt is due and *293 payable for which he is bound, in the cases of Campbell v. M'Comb, 4 Johns. Ch. Rep. 538. Ranelaugh v. Hayes, 1 Vern. 190.
Taking the sureties, then, to have paid the debt, and to seek by substitution to have the benefit of the creditor’s lien, there can be nothing more clear, than their right to this, as a general principle. It imports us only to examine the objections made to its application in the present case. These objections have been presented with great force and ability, by the counsel for the appellees. It is contended, that the lien of the judgement has been lost by lapse of time, no elegit or indeed other execution having ever issued; that the lien has been destroyed by the discharge of the judgement by the sureties; and that it has also been destroyed by the execution of the deed of trust, which has changed the character of the sureties from creditors into purchasers.
I do not understand the counsel for the appellees as contending, that the two first of these objections could prove a barrier to the right of the sureties to proceed against the debtor himself. However long the judgement may have been out of date, there is no doubt, that, if susceptible of being revived at all, the lien upon the land yet in the hands of the debtor, would be revived eodem flatu; and there can be as little doubt, that if the principal debtor were to interpose the objection that the surety had discharged the debt, a court of equity would frown upon such a defence in its own forum, and would inhibit it in any other. 2 Call, 136, 7. But it is alleged, that the subsequent creditor has equal equity; and that by the payment or other discharge of the judgement, the legal lien which it gave is extinguished ; and it is contended, that that lien should not be revived at the instance of a surety against the’second incumbrancer, who has by the fact of the discharge of the first judgement, acquired the better title at law. And the principle is relied on, that where equity is equal the law will prevail.
The principle is unquestionable, but its application may be doubted. It is not true, that the equities of the parties, *294 in the case supposed, are equal; and if that of the sureties . . , be supenour, it must prevail, although their adversary may have the law in his favour. The whole train of authorities on this subject, is founded upon the principle of the superiour equity of the sureties, to be paid out of that fund to which their créditor might have resorted, for their relief. The surety in a bond, for the payment of which the principal has bound particular property, has a preference over all other persons, to have the debt charged upon that fund. If the principal dies, and after his death the surety pays off the bond, he has a right to demand the payment of the bond, out of the assets, before the simple contract creditors, and thus to be placed in the shoes of the obligee; because, at the instant of the principal’s death, the obligee had a right to demand payment out of the assets, in preference to any simple contract creditor : in good faith, he should have demanded such payment, instead of putting the burden on the innocent surety: in good faith, the executor should have so applied the assets. An adequate portion should have been set apart and appropriated for that debt. No simple contract creditor had, or could have by law, any claim thereto. If the executor were sued by simple contract creditors, he might plead the outstanding bond in bar of the demand. He might fence around an adequate portion of assets against all their assaults. Nor is the state of things changed by payment being forced from the-surety, or being voluntarily made by him. If forced from him, a court of equity-will give him redress: it will consider him as standing in the shoes of the creditor, who ought to have looked to the estate of the principal, instead of drawing money from the pocket of the surety: it will consider the executor as holding a certain portion of the assets, as trustee for the payment of this very debt, and hold him to the discharge of the trust in its spirit, when it can no longer be performed to the letter: and it will deny to the simple contract creditor, who had no right to these funds, the application of then! to the payment of his debt. And why ? If the surety discharge *295 the bond, or a judgement and execution upon it, is he not a simple contract creditor only? and has not any other simple contract creditor a legal right to resort to this fund, as there is now no longer any bond or judgement to be charged upon it ? and has he not equal equity ? The answer is, no : he not only has not equal equity, but he has no equity whatever to charge a fund which, in equity and justice, belongs to another. He has no equity to demand, that money, which by law ought to have been applied to pay my debt, shall be applied to pay his. The ease is the same, if the payment is made voluntarily by the surety. In making that payment, he is governed by the law of this court. Even on entering into his engagement as surety, he looks to its well established principles. He knows, if he pays the debt to the obligee, he will stand in the obligee’s shoes. He knows he will be subrogated to all the rights of the obligee, as they subsist at the time he makes his payment. lie knows that a court of equity looks not to form but to substance; that it looks to the debt which is to be paid, not to the hand which may happen to hold it; that the fund charged with its payment, shall be so applied, whosoever may be the person entitled; and that it considers a debt as never discharged, until it is discharged by payment to the proper person, and by the proper person. He knows, that that court, which permits no act of a trustee to prejudice the cestui que trust, will not permit one who stands in the relation of the creditor or obligee to the surety, to bar him of those rights which the principles of equity have secured to him. He is conscious, that his rights do not depend upon the caprice of the creditor, or the whim of an executor, or the sense of right of other creditors, but rest upon the immutable principles of justice and equity; and, in making his payment, he does it in the confidence, that he will be entitled to be indemnified to the full amount, to which his creditor could have charged the assets of the principal.
The foregoing case, which I have put as an illustration, will sufficiently disclose my idea of the principles of equity, *296 in relation to this doctrine of substitution; and all the cases, i believe, will sustain the opinion, that the surety’s right of subrogation, can never be resisted by any other creditor, on the ground that he has the law in his favour and equal equity. F°r’ ’n trut^’ kas n0 at aü as against the surety.
It would be unprofitable to go into a minute examination of the various cases which have been decided upon this subject, in some of which it is clearly seen, that the supposed legal advantage of a party will not protect him from the operation of this subrogation of the surety to the remedies of the creditor. It may, however, not be amiss to refer to two of the cases, with a view to make this matter more clear.
In the case of Eppes v. Randolph, Wayles’s executors paid off a bond in which their testator was surety for Randolph to Bevins. Chancellor Wythe declared, that they would have a right to stand in his shoes as against the heir, who had been forever discharged at law by the payment of the bond; and that if they had taken an assignment of the bond, and the heir had pleaded payment by the surety, he would have injoined him from making that defence. And the court of appeals further declared, that in the administration of the assets of the estate, which were inadequate to the discharge of all the debts, the executors of Wayles, who at law would only have been simple contract creditors, should be considered as bond creditors. The effect of this arrangement was to give them a preference over simple contract creditors, who at law had a right to an equality, and thus to deprive the latter of the legal right to participate in the fund, which they would have enjoyed but for the interference of equity. So in Tinsley v. Anderson, it was declared, that, in the distribution of the funds, the sureties should be placed in the shoes of the creditors they had paid; the effect of which arrangement was to exclude from their legal equality, simple contract creditors, who, but for the interference of equity, would have enjoyed a full share of the fund.
*297 Now, in these cases, it is clear, the legal right of the simple contract creditors was invaded. For, if the fund was only sufficient to pay off the bond, they would get nothing; and if it was even more than adequate to pay off the bond, but not enough to pay off the simple contract creditors also, the bond would be discharged in the first place, and they would only get the residuum among them. A more marked disregard of the legal privileges of parties, cannot well be conceived.
As to the position, that by taking the deed of trust, the sureties put off their character of creditors and assumed that of purchasers, 1 cannot understand that the opinion in Tate v. Liggat, referred to, designed to go so far as to say, that a creditor by judgement, who takes a mere collateral security for the payment of his debt, thereby loses intirely the benefit of his judgement lien; and unless the principle be extended thus far, it can have no influence upon this case. Be this as it may, 1 understand that the principle is not considered as settled by that case. I am of opinion, therefore, that there is no validity in this objection.
In the views I have taken of the sureties’ right of subrogation here, I have treated the claim of Kinney, as if it were a real and subsisting debt. But if we regard it otherwise ; if, as I have shewn, Holloway was no debtor of Kinney ; then the question of subrogation is one between the sureties and their debtor alone, and not between the sureties and another creditor of that debtor. In this point of view, the case is divested of every difficulty. The existence of a debt from Holloway to Kinney is, indeed, the essential ingredient in every part of this transaction. Without it, the deed of trust to the sureties is unquestionable; without it, their right to subrogation cannot be contested; without it, there is no barrier to an elegit on Warwick's judgement, though it may have run out of date; without it, the attachment of Kinney was illegal; without it, the decree in that case, was irregular; and without it, no decree could have *298 been properly entered against Holloway in the state of the . , . cause appearing to this court.
I have not deemed it material, or proper, to examine all the objections to Kinney’s decree against Holloway, as there is no appeal from that decree. There is one, however, which ought not to be passed in silence, lest this court should seem to have disregarded it. I mean the decree for the sale of the land, not for payment only of the sum due, but for the deferred instalments also. The parties not having contracted for a mortgage, a mortgage could not have been decreed to be executed by Holloway. Yet this decree is, uno flatu, both mortgage and foreclosure. The utmost that should have been decreed, was, that Holloway should execute his bonds for the instalments, and that the vendor’s lien should be retained for the security of them until payment.
The decree entered by the court, declared, that in the original cause of Kinney and wife against Holloway, no sufficient ground appeared, upon which Kinney and wife could proceed by foreign attachment against the absent defendant, Holloway; no debt appearing to be due by Holloway to Kinney, but his demand depending upon the contingency of the execution of a deed by his wife for her land sold by her husband, which contingency might never happen, and did not appear to have as yet occurred: that, such being the case, whatever decree might have been rendered as between Kinney and Holloway (a matter of which this court had not cognizance, since no appeal from the decree in that cause, was before it), the appellants had a right to arrest .the execution of the decree actually pronounced, at least so far as it respected the sale of Holloway’s proper moiety of the tract of 916 acres of land, devised by his uncle to him and his sister; and they had moreover a right to a decree for the sale of Holloway’s moiety (either under Holloway’s mortgage thereof for their indemnity, or as standing in the place of Warwick, so far as they had paid off and discharged his judgements, or as entitled to compel *299 payment thereof out of Holloway’s property thereby bound to satisfy them) for any sums which they might have paid, or be liable to pay, for Holloway; of which an account ought to be taken : and that, therefore, the injunction to the execution of Kinney’s decree against Holloway, of Decernher 1823, ought to be reinstated and perpetuated, so far as respected the moiety of the tract of 916 acres which belonged to Holloway as devisee of his uncle. Therefore, the chancellor’s decree was reversed with costs, and the cause remanded, to be further proceeded in, according to the principles here declared.