# Wytheville.

## M. C. FEREBEE v. JOSEPHINE TODD, ET ALS.

June 12, 1930.

Absent, Prentis, C. J., and Epes, J.

The opinion states the case.

*Ferebee & White*, for the appellant.

*Tazewell Taylor, Jr.*, for the appellees.

BROWNING, J., delivered the opinion of the court.

The pertinent facts in this case should be at once stated that we may be put in possession of a sufficient understanding of the decisive questions for our consideration. The immediate action is a suit for the specific performance of an alleged contract for the

purchase and sale of three parcels of land located in the city of Norfolk, Virginia. M. C. Ferebee presented to a real estate agent of Norfolk, Mr. W. C. Cobb, an offer to purchase the said real estate in the form of a letter bearing date of March 12, 1927, which is as follows:

"March 12, 1927.

"MR. W. C. COBB,

"Norfolk, Virginia.

"DEAR SIR:

"Confirming our interview I will take over the property at the southwest corner of Freemason and Brewer streets, known as the Todd property or former residence, fronting approximately forty-one feet on Freemason street and one hundred and ten feet on Brewer street, at the cash price of twenty thousand dollars. I am interested in this only because I own the southeast corner of Freemason street and Monticello avenue. I will under no considerations pay more than twenty thousand dollars for the Todd corner.

"Respectfully,

"(Signed) M. C. FEREBEE.

"P. S.—This offer holds good for ten days from March 12, 1927."

This communication was submitted by Cobb to some of the owners of the real estate and two days thereafter, to-wit, on the 14th day of March, 1927, twelve of the owners addressed to Ferebee the following letter:

"NORFOLK, VIRGINIA, March 14, 1927.

"MR. M. C. FEREBEE,

"Norfolk, Virginia.

"DEAR SIR:

"Referring to your letter of the 12th instant addressed

to Mr. W. C. Cobb, Norfolk, Virginia, we, the undersigned, hereby accept your offer to purchase the property situated at the southwest corner of Freemason and Brewer streets, in the city of Norfolk, Virginia, known as the Todd property and fronting approximately forty-one feet on Freemason street and one hundred and ten feet on Brewer street, for the sum of $20,000.00 cash.

"In view of the fact that there are two infants who have an interest in this property, it will be necessary to institute a suit in chancery for the sale of infant's lands and therefore this sale will necessarily have to be and the same is made subject to the confirmation of the court wherein the suit is instituted. The time limit of ten days mentioned in your letter is not to apply. This sale will be consummated as speedily as possible.

"Very truly yours,<br>
"(Signed) JOSEPHINE TODD,<br>
"CHAS. O. SANTOS, JR.,<br>
"MARY E. SANTOS,<br>
"MARGUERITE S. IVES,<br>
"CHAS. A. ETHERIDGE,<br>
"JAMES E. ETHERIDGE,<br>
"FANNY E. DOYLE,<br>
"VIRGINIA E. HITCH,<br>
"JOSEPH F. SANTOS,<br>
"PAUL O. SANTOS,<br>
"EDWARD VALENTINE FOX,<br>
"(Guardian)<br>
"CECELIA HUTCHINS,<br>
"HERBERT R. ETHRIDGE."

On the margin of this letter Ferebee wrote the fol-

lowing, attaching his signature thereto: "I hereby accept the conditions in this letter except that the settlement date and title is fixed for April 1, 1927, or July 1, 1927."

To the condition embodied in the marginal statement of Ferebee, no written response was ever made by any of the owners of the property.

On March 24, 1927, the said Ferebee addressed and sent a letter to certain of the owners, which is as follows:

"NORFOLK, VIRGINIA, March 24, 1927.
"MRS. JOSEPHINE TODD",
    J. E. ETHERIDGE, ESQ., AND
        "C. O. SANTOS, ESQ., AND OTHERS,
            "Norfolk, Virginia.
"DEAR SIRS AND MADAM:

"Inasmuch as it appears that before title can be conveyed to the property to be sold to me, which is located substantially as follows:

"At the Southwest corner of Freemason and Brewer streets, fronting approximately forty-one feet on Freemason street and running back one hundred and ten feet and known as the 'Todd Residence', a suit in chancery will have to be brought—the authorization of the Judge had. It therefore appears that the interest of these infants will have to be thoroughly protected to the extent of inviting competitive bids. If, therefore, realty values should be stimulated during the period, as there now appears a prospect, it is quite possible that the proposed vendors would be unable to deliver the property at the price named. I am also advised that a contract by one to sell an infant's real estate in advance of any legal authority is contrary to public policy and void, since it would be to the interest of the parties to see that it bring no more than the contract price. You can readily understand that there

being no certainty that the property can or will be transferred to me, I would not be justified in proceeding with the plans for the extensive developments in mind.

"To be perfectly frank with you, I do not feel justified in undertaking the burden and uncertainty and responsibility incident to the transaction. My doctor has also advised me to that effect.

"Therefore, much to my regret, I am compelled to withdraw the offer made to you for the above real estate and trust that you will be good enough to consider the transaction as wholly ended between ourselves for the sale and purchase of the land above described.

"I am,

"Yours very truly,
"(Signed) M. C. FEREBEE."

The property was owned by fourteen adults and two infants. The title to two parcels of the property was in a Mrs. Josephine Todd, as sole owner, and the title to the remaining parcel was in the adults and the infants jointly.

Subsequent to the above correspondence, to-wit: on the 31st day of March, 1927, Ferebee was informed by letter from the attorney for the owners that prior to the receipt of Ferebee's letter of March 24th necessary steps had been begun and would be continued to furnish him with a deed to the property in accordance with the terms of the agreement and that they would be ready, able and willing to deliver to him the deed and make settlement therefor on July 1, 1927. No reply was made by Ferebee thereto. Some time later the owners undertook to place themselves in a position to carry out the terms of the agreement.

A partition suit was instituted by them to which Ferebee and the two infants were made defendants. The style of this was *Todd, et als.* v. *Fox, et als.* There-

after in the course of this proceedure Ferebee was dismissed as a party defendant upon motion of complainants. The said suit was prosecuted to the point of the court's approval of the sale to Ferebee for the sum, specified, in the correspondence, of $20,000.00. A special commissioner was appointed to convey title to Ferebee and pursuant thereto he, with Josephine Todd, the sole owner of two parcels of the property, executed an appropriate deed conveying the said property to him. There was a tender of this deed to Ferebee who declined to accept it and to pay the purchase price for the reason that he had withdrawn his offer of purchase prior to the institution of the partition suit. Thereafter a rule was sued out in this suit and issued against Ferebee under the authority of section 6274 of the Code of Virginia requiring him to show cause why a judgment should not be entered against him for the amount of the purchase price, etc. Ferebee resisted this rule and the trial court dismissed it for the reason that the offer to purchase was made to the parties complainant in the bill and not to an authorized commissioner of the court and this being so it was a private and not a judicial sale and the proposed purchaser was not within the control of the court nor was he a party to the suit, nor a *quasi* party as a purchaser at a judicial sale would be after making a bid.

After the said proceedings were had in the partition suit of *Todd, et als.* v. *Fox, et als.* the complainants filed their bill in this suit in November, 1927, first praying for a personal judgment against Ferebee for the amount of the purchase price or a resale of the property at his risk and costs, etc. Whereupon the defendant demurred to the bill and upon the sustaining of the demurrer upon one of its grounds the bill was amended to pray for the specific performance of the contract. The defend-

ant then filed his plea of *res adjudicata* which was rejected, then a demurrer to the bill which was overruled, and thereupon filed his answer. The two infants were not made parties to this suit. The issue as then made up was heard by the trial court resulting in its decree requiring the defendant to accept the deed and pay the purchase price of $20,000.00. This is the decree complained of by the appellant. Thus we have before us for decision a case which has occasioned no little difficulty, because so many questions of law, apparently pertinent and applicable, have been urged upon both sides with legal acumen and conspicuous ability. To emerge from these and seize upon the controlling principles has been perplexing.

Great industry has been shown by the respective counsel in the citation and review of many cases, both from our own court and the courts of other jurisdictions, as authority for the positions taken, but in our view of the pivotal questions upon which this decision must turn, it is only needful to consider a few of them from our own court, which construe the two statutes by the provisions of which alone infant's lands, or their interests in lands, can be transferred, and from which we cannot escape the irresistible conclusion that the decree complained of must be reversed for two reasons. First: That the contract lacked the essential element of mutuality. Second: Because title to the interest in lands of infants cannot be divested and transferred in a suit for specific performance.

To constitute a binding contract for the sale of land, both parties must be bound or neither will be bound. Where both parties are not bound, specific performance will always be denied. This is a well settled principle and needs the citation of no authority to sustain it. The contract before us was one which

was not binding because it lacked mutuality. Until the offer made by Ferebee was accepted by the court, it was not binding. At any time prior to the court's acceptance of the offer made by Ferebee, he had the right to withdraw his offer and that is what he did when he wrote the letter of March 24th. On the other hand, the court would not have been bound to have accepted the offer, even if Ferebee had not withdrawn it, because if it had appeared to the court that the property was worth more than $20,000.00, it would never have accepted Ferebee's offer, for to have done so would have been prejudicial to the infants.

As determinate of both of the questions above discussed, Professor Lile, in his admirable work entitled Notes on Equity Jurisprudence, at page 225, under the title, "Mutuality of Remedy," said: "An important principle in connection with specific performance of contracts is that where the defendant could not have compelled the plaintiff to perform—as where the plaintiff was an infant at the time the contract was made, or that the wife of the plaintiff-vendor could not have been compelled to unite with him in the conveyance—the defendant will not be compelled to perform on his part, howsoever good a title the infant, in the one case, or the husband-vendor, in the other, may be able to convey at the time the suit is brought."

To sustain this proposition Mr. Lile cites the case of *Haden* v. *Falls*, 115 Va. 779, 80 S. E. 576, 579, Ann. Cas. 1915 chapter 1034, which in turn quotes with approval from the earlier Virginia cases of *Evans and Wife* v. *Kingsbury*, 2 Rand. (23 Va.) 126, 14 Am. Doc. 779, and *Watts* v. *Kinney and Wife*, 3 Leigh (30 Va.) 272, 23 Am. Dec. 266, which "were each suits by the husband and wife against the vendee for a specific execution of the contract of the husband against his

vendee. In these cases the court found it necessary to consider and decide what ought to have been the holding if the suits had been brought by the vendee; and in each of them the court held that such a decree could not have been properly rendered in favor of the vendee, and refused to decree specific performance in favor of the vendors on the ground of want of mutuality.''

It will be realized that here we are not dealing with the possible or probable affect of the agreement as between the adult owners and Ferebee or their rights, if any, thereunder against Ferebee, because, manifestly, that question is not before us.

Further in relation to the question of mutuality, 3 Williston on Contracts, section 1438, page 2562, with reference to contracts with infants, is as follows: ''An infant is not allowed to enforce a contract specifically, because it is said the contract lacks mutuality. This is often thought to mean merely that since the adult could not have enforced the contract against the infant, the infant is similarly deprived of equitable relief, but the difficulty is not simply that the adult could not have enforced the contract against the infant, but that even though the adult performed the contract, the infant might subsequently exercise his privilege to rescind the transaction. The decree of the court should not be used to deprive him of his privilege; and unless he is deprived of it, the adult is subject to injustice if compelled to perform. This difficulty does not arise where the infant has come of age before seeking to enforce the contract. In such a case specific performance should be granted; and also where the infant has irrevocably performed his side of the contract.'' *Tulin* v. *Johnston*, 152 Va. 592, 147 S. E. 206, 207.

And upon the same subject in 25 R. C. L. section 35, 234, is the following: ·

"*Disability as Affecting Mutuality*.—By reason of the doctrine of mutuality, an executory contract containing mutual covenants which is not enforceable as regards one of the parties because of infancy, coverture, or other disability will not be enforced in equity against the other party. Hence it is a general rule that where a married woman does not have capacity to bind herself to the performance of an executory contract, the party assuming to contract with her is not, in equity, obliged to perform such contract on his part. Similarly an infant cannot sustain a suit for the specific performance of a contract, because the remedy is not mutual. But in all such cases where the one under legal disability has performed all his obligations, equity may compel specific performance on the part of the other."

The above citations were quoted with approval by Prentis, C. J., in his well reasoned opinion in the case of *Tulin* v. *Johnston*, 152 Va. 587, 147 S. E. 206, 208, which case we here cite as controlling authority for both of the positions herein taken. We further invoke the authorities cited in the opinion in the said case, particularly that of *Freeman* v. *Fishman*, 245 Mass., 222, 139 N. E. 846, wherein it was said: "As is commonly said: There must be mutuality of obligation, or the court refuses to interfere."

Hence we conclude that the contract lacked the necessary element of mutuality.

Passing to a brief discussion of the second position taken.

There are only two ways known to the law in Virginia whereby title to infants' lands can be divested and transferred. (a) By virtue of chapter 217 of the

Code, which authorizes the sale of infants' lands. Such procedure is commonly known as a suit for the sale of infants' lands, and (b) by virtue of chapter 214 of the Code, which authorizes joint tenants to compel the partition of lands or the sale of lands and a division of the proceeds, whether there be infants' interest in the lands or not. This procedure is commonly known as a partition suit. These two procedures are exclusive and through one or the other of them alone can the title to infants' lands be divested.

If we should hold in this case that the infants' interest in the property could be transferred through this suit for specific performance to which they are not parties, it is obvious that they could later divest the purchaser of the title because the title to the property had not been transferred in accordance with the statutory requirements of chapter 214 or chapter 217.

We have been unable to find any Virginia case which holds that an infant can be divested of his real estate in a suit for specific performance. In the immediate suit, we are asked to divest the infants of their land and transfer the title to Ferebee, when the infants have not even been made parties to this suit. Such we cannot do.

We quote from the case of *Tulin* v. *Johnston, supra*, as follows:

"This obstacle the appellees realize fully, for they are here only relying upon that suit as a fact which in some way validates or aids this contract for the sale of the infant's interest in the property and supports this decree for specific performance. This cannot be. Certainly the court had jurisdiction to sell the property in the partition suit, but it could not in that suit, against the protest of Tulin, force him to buy it, or validate the previous invalid contract to sell it. Had

the purchaser accepted the second deed which was tendered him, this would not have precluded the infant, Jordan A. Pugh, Jr., from hereafter attacking the validity of the proceedings. Should the purchaser be required to accept the deed which is now tendered, and the infant after coming of age should undertake to repudiate the contract and attack the proceedings, and could show that the sale was against his interest, it might be difficult to uphold the transaction, which in some aspects is unusual. It would neither be a sale in the partition suit nor a sale under the statute for sale of lands of infants. If this decree should be affirmed, then Tulin would derive his title to the infant's interest directly from the decree in this suit for specific performance of the original contract. To affirm the decree would require the appellant to accept a questionable title and would be to disregard the rule which we have stated, for we perceive nothing which brings the case within any of the exceptions to it. It may be true that the real reason the appellant declines to accept the property is because he has changed his mind as to the bargain, and that under the peculiar facts of the case his refusal to comply with his agreement cannot be justified in the forum of ethics, but this, if so, is insufficient. While it seems to be a hard case upon the appellees, nevertheless to sustain their contentions would establish a bad precedent which would ignore and contravene the wise and logical rule which governs the case."

Thus we conclude that this contract cannot be specifically enforced in this suit.

Therefore, we reverse the decree complained of and enter final judgment for the appellant, Ferebee.

*Reversed.*