# Staunton

## C. L. CLARK v. W. W. GEORGE, GUARDIAN, ETC., ET ALS.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*John P. Buchanan,* for the appellant.

*William A. Stuart* and *W. V. Birchfield,* for the appellees.

GREGORY, J., delivered the opinion of the court.

The appellant, C. L. Clark is complaining of a decree entered against him, on June 21, 1932, by the Circuit Court, wherein the principles of the cause were adjudicated.

A brief statement of the facts, followed by a detailed and chronological statement of the pleadings and the matters therein contained, is necessary to a proper understanding of the case.

T. E. George died intestate in 1927, some four years before the institution of this suit. He left surviving him, his widow and seven children, two of the children being infants. At the time of his death, in addition to certain personal property, he was seized of two tracts of farm land—one tract, containing 138 acres and known as the Cobb land, and another tract known as the T. E. George home place, containing 444.35 acres. The former tract of 138 acres is not involved in this suit. The present litigation involves the 444.35 acre tract.

W. W. George, a brother, qualified as administrator of the estate, disposed of the personal property and applied the proceeds, as far as they would go, to the debts of T. E. George. The 138 acre tract was sold and the proceeds over and above the lien on this tract were paid over to the creditors of T. E. George. More than $78,000 was paid to the creditors but there was still a balance due them, both secured and unsecured, of more than $40,000 of which $24,000 was secured on the 444.35 by a first deed of trust and the residue of some $16,000 was due unsecured creditors.

Considerable effort had been expended, but without success, to secure a purchaser for the 444.35 acre tract. Finally, Mrs. T. E. George, the widow, after conversations with the brothers of her late husband and after negotiations with the Frank Miller Land Corporation, signed a contract engaging the land corporation to divide the farm into parcels and sell it at auction to the highest bidder.

After advertising the sale the land corporation offered the farm, first in parcels and then as a whole. It was announced by the auctioneer just before the sale that it would have to be confirmed by the court because two of the children, who were heirs, were infants. The property was auctioned in parcels and then as a whole, it bringing as a whole $31,548.85, a little more than $200 in excess of the aggregate bids on the parcels. C. L. Clark, the appellant, having offered the highest bid for the property as a whole, it was sold to him, subject to the confirmation of the court, and the following memorandum of the sale was signed by him and the auctioneer:

"Memorandum in Writing of Sale of Farm Signed by the Purchaser and the Auctioneer, and witnessed at the time of the sale.

"This is to certify that I have this day bought of Mrs. T. E. George, through the Frank Miller Land Corporation, real estate agents, the following real estate, as shown by map and survey, and on the terms and conditions announced at said sale; same being Tract Nos. 1 and 8 inclusive—444.35 for which I agree to pay $71.50 per acre.

"(Signed) C. L. CLARK.

"June 24, 1931.

"(Signed) C. F. SWAIN,
 "Auctioneer.

"Witnessed by:
"(Signed) R. C. COPENHAVER."

The bid of C. L. Clark was accepted, subject to the confirmation of the court. This necessarily released those successful bidders of the separate parcels. A short time after the auction sale the administrator and others interested, not being entirely satisfied with the price obtained for the farm, sought to get a better price. They tried to induce Clark to increase the price he had agreed to pay.

They stated that if they could obtain more for the farm they would have less difficulty in securing the confirmation of the sale by the court. They also offered the property to others at an increased price but with the understanding that Clark should be allowed to meet any advance price that others might offer. Clark however was not a party to any negotiations with the prospective buyers. All efforts in this direction were unavailing. W. W. George then qualified as guardian of the two infant children, and as such instituted a chancery suit, filing a bill which contained the usual allegations for the confirmation of the sale of infants' lands. The two infants, the adult children and the widow of T. E. George, deceased, were made parties defendant. The heirs of the infants, if they were dead, were also made parties. In addition the Prudential Insurance Company, the lien creditor, the administrator of the estate, C. L. Clark and the First National Bank of Saltville were also made parties defendant. The bill does not disclose why the bank was made a party. The lien creditors and the unsecured creditors, giving their names and the respective amounts due them by the estate of T. E. George, deceased, are set forth in the bill. There is an allegation that the total indebtedness of the estate is some $40,000, and that the purchase price agreed to be paid by Clark will be insufficient to pay all of the debts in full.

The prayer of the bill is that the sale be confirmed to Clark; that a commissioner be appointed to convey the property to him and if it is necessary that an account of liens be taken.

The object of the suit was to sell infants' lands and chapter 217 of the Code was complied with in so far as the institution of the suit and the filing of the bill was concerned, but it is clearly apparent from the subsequent proceedings that the real purpose was to sell the land to pay the debts of the estate rather than to reinvest the proceeds of sale as provided by chapter 217, referred to.

C. L. Clark filed a demurrer to the bill. The grounds

of the demurrer were that the suit was for the purpose of compelling him to specifically perform the contract he had made, evidenced by the memorandum, which showed that the contract was made with Mrs. George personally, while the title to the property was then vested in the children, two of whom were infants, subject to the dower of Mrs. George; that she was only the owner of a dower interest, and that the court could not require the specific performance of a contract for the sale of infants' lands on account of the lack of mutuality in such contracts; that the real object of the suit was to enforce the contract of the sale of infants' lands, not for the purpose of reinvesting the proceeds as is required, but for the purpose of paying the creditors of the estate; that the suit, while in the nature of a suit to sell infants' lands, is also one in the nature of a creditors' suit; that if the complainant has any remedy against the demurrant it is a legal one and not an equitable one.

The trial court withheld its decision upon the demurrer. Later the First National Bank of Saltville, a creditor of the estate, and named as a defendant in the original bill, filed an answer and cross-bill to which, not only the complainants in the original bill were made parties, but in addition a great number of new parties were brought in as defendants. The new parties were the other creditors of the estate. The important allegation in the cross-bill is that the creditors of the estate are entitled to be subrogated to the rights of the heirs of T. E. George and that they should be allowed to maintain the suit for specific performance of the contract with Clark. The prayer is that the said contract be specifically enforced.

The appellant demurred to the cross-bill. He insisted that the court should pass upon his demurrer which had been interposed to the original bill and he assigned numerous grounds of demurrer to the cross-bill. He asserted that equity had no jurisdiction to entertain the cross-bill; that the First National Bank was a creditor of the estate

of T. E. George, deceased, and that there was no privity between the bank and the appellant; that the bank had no cause of action against him; that the bank was not a party to the contract of sale sought to be specifically enforced; that the bank as a creditor of the estate is not authorized to compel the appellant to comply with the contract which was made between Mrs. T. E. George and himself; and that inasmuch as no creditor's suit had been instituted against the estate, and inasmuch as the property was voluntarily sold by her for the heirs, the bank had no standing in the suit.

The court also withheld its decision upon this demurrer.

A little later the guardian of the infants who had originally instituted the suit to confirm the sale of infants' lands, and who was himself the complainant in the original bill, filed a petition in the cause in which he concurred in the prayer of the cross-bill which has been filed against his wards, two of the defendants therein, that the said contract with Clark be specifically enforced in this suit.

To this petition the appellant filed a demurrer. The appellant filed additional grounds of demurrer to the original bill and the petition of the guardian. He asserted that the lands belonged in part to infants and that no title could be secured in the manner set up in the bill; that the contract relied upon was not made with the owners of the land or their legal representatives and he could not be required to comply with it until the court, by proper decree, in a legal manner, had confirmed the sale as this was the condition upon which the sale was made; and that there was no mutuality in the contract and therefore it could not be specifically enforced.

Later various creditors filed their petitions and answers to the cross-bill, all concurring in its prayer.

On June 15, 1932, the court entered a decree in which it denied the prayer of the original bill and the cross-bill and the prayer of the various creditors and heirs who

had concurred in the prayer of the cross-bill. The demurrers to the original bill and the cross-bill were sustained upon the ground that the infants had an interest in the lands, and that being true the court could not decree specific performance of the contract. But the court granted the cross-complainant and the heirs and creditors the right to amend their pleadings asking for a different form of relief against Clark. It was also decreed that Clark had shown no good reason why he should be released from the contract.

Later, the pleadings were all amended, as suggested by the court, changing the form of relief asked for and asking that the lands be resold at the risk and expenses of the appellant.

On June 21, 1932, the court entered another decree, which is the one here appealed from overruling the demurrers and objections of the appellant to the amended bill and cross-bill and to the petition which had been filed by the infants by their next friend. The contract with Clark was established and adjudicated as a valid and binding contract for the sale and purchase of the lands. It was also adjudicated that it was to the best interest of the infants "that the purchase of the said land by the said C. L. Clark be enforced against him," and that the contract was not void but only voidable. It was ordered that unless Clark, within thirty days, carried out the contract, commissioners who were appointed in the decree should resell the land at the expense and risk of Clark.

From a review of the pleadings in this cause it is at once clear that the whole foundation for this suit is the memorandum of the contract heretofore set out signed by C. L. Clark and the auctioneer whereby Clark agreed to purchase the land at the sale conducted by the Frank Miller Land Corporation, real estate agents acting for Mrs. T. E. George.

The title to the land at the time of the auction sale was vested in the seven children of T. E. George, deceased,

two of whom were infants, subject to the dower rights of their mother, Mrs. T. E. George.

The estate of T. E. George was insolvent at the time, but the creditors who had the right to subject the land to the payment of their debts, by instituting a proper creditor's suit for that purpose, never exercised that right.

The court by its decree recognized the principle announced in *Tulin* v. *Johnston,* 152 Va. 592, 147 S. E. 206, and *Ferebee* v. *Todd,* 154 Va. 293, 153 S. E. 705, 708, that an infant's contract for the sale of lands cannot be specifically enforced against a purchaser because mutuality is lacking in such a contract.

The procedure in this suit originally conformed to chapter 217 of the Code which authorizes the sale of infants' lands. Infants' lands can only be sold under the authority and for the purpose contained in that chapter.

After the original bill had been filed the court permitted a creditor of the deceased, The First National Bank of Saltville, to convert the suit from a suit to confirm the sale of infants' lands into a general creditors' suit the purpose of which was to pay the debts of the deceased. This, of course, was entirely foreign to the original purpose of the suit. It changed the whole course of procedure and departed from the provisions of chapter 217 of the Code.

The decree appealed from denied specific performance of the contract but held it valid and binding and directed that the lands be resold and that the appellant be held liable for any deficiency that might arise between the contract price and the resale price. The effect of the decree is that while the contract is valid it cannot be specifically enforced, yet damages should be awarded against the appellant for his breach if there is a deficiency between the contract price and the resale price.

The appellees do not assert that the procedure is in conformity with that provided for in such cases. They do contend however, that under the liberal rule applied by this court regarding amendments and under the stat-

ute of jeofails, this court will not reverse the decree of the trial court for any defect in the pleadings. if substantial justice has been done, and that the decree complained of does substantial justice between the parties. Code, sections 6331 and 6104 are the statutes relied upon. Section 6331, among other things, provides that a decree shall not be reversed for defects in the pleadings "where it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Section 6104 provides that the court may, in furtherance of justice permit pleadings to be amended, or material supplemental matter to be set forth in amended or supplemental pleadings. It further provides that the court should disregard errors and defects which do not affect the substantial rights of the parties. We are not unmindful of the purpose and intent of the legislature in enacting these statutes nor of the liberal construction this court, from time to time, has placed upon them, but we cannot approve of such a radical departure from the established procedure which has long obtained in this State, as is exemplified by the procedure in the present cause. No authority will be found in the Code sections referred to, that will justify it no matter how liberal this court in the past has been in construing them.

In *Ferebee* v. *Todd, supra,* in an able opinion by Justice Browning in which a somewhat similar suit was involved, it was held that: "There are only two ways known to the law in Virginia whereby title to infants' lands can be divested and transferred. (a) By virtue of chapter 217 of the Code (section 5334 *et seq.*), which authorizes the sale of infants' lands. * * * and (b) by virtue of chapter 214 of the Code (section 5279 *et seq.*), which authorizes joint tenants to compel the partition * * * whether there be infants' interest in the lands or not. * * * "

It is plain that the real purpose and object of the original bill filed in this cause was to sell the lands and pay the debts of T. E. George, deceased, and not to reinvest

the proceeds as is required by the statutes in such cases made and provided. The court below correctly held that specific performance of the contract could not be decreed and when the demurrers were interposed to the original bill and the cross-bill, it correctly sustained them, but it should have dismissed those bills. It was in error when it permitted the cause to be converted from a suit to confirm the sale of infants' lands into a general creditors' suit. If, as is contended by the appellee, the infants had no interest in the lands then it was not necessary for their guardian to institute a suit to confirm a sale of them. Again if they had no interest, then the creditors, who are not in privity with the appellant, have no right to ask for the specific performance of a contract to which they are not parties. If the infants had an interest, then, under the law in Virginia, they could not ask that the contract be specifically enforced. In no event has the court the power to indirectly enforce the contract by practically and in effect awarding damages for its breach when at the same time it did not and could not decree its specific performance because of lack of mutuality.

The suit, if maintainable at all, must be considered either as a suit to confirm the sale of infants' lands or as a general creditors' suit. If the former, its object and purpose must be to reinvest the proceeds, not to pay debts; if the latter, its object and purpose must be to subject the lands to the payment of the debts of the estate. When a suit is instituted to confirm the sale of infants' lands, there must be not only a substantial compliance with Code, section 5335 of chapter 217, but there must be substantial compliance with the other provisions of that chapter (section 5334 *et seq.*). *Wheeler* v. *Thomas,* 116 Va. 259, 81 S. E. 51. Nowhere in the chapter is there any authority for the sale of infants' lands or a confirmation of such sale for the purpose of paying the debts of a testator or intestate, by or from whom the title to the lands has been devised or inherited by the infants. The

purposes for which such a decree for sale may be entered by a trial court are only those found in section 5340.

In *Gee* v. *McCormick,* 142 Va. 173, 128 S. E. 541, in an able and exhaustive opinion handed down by Campbell, J., now the Chief Justice of this court, there is a review of many of the cases upon this subject. The procedure as well as the essentials to the validity of such a suit are clearly outlined in that case. When the present suit is tested by the principle applied in that case and the many other cases therein referred to, it is perfectly plain that the trial court erred in its decree.

 The court was not warranted in converting the suit into a general creditors' suit. The creditors were not parties to the contract with Clark. They had no right either to ask for its specific performance, or damages for its breach. They were not even proper parties to the original suit and they had not the slightest interest in the contract. Their rights were otherwise protected under the law. The doctrine of subrogation has no application here.

Our conclusion is that the court should have sustained the demurrers to the original bill, the cross-bills and the petition by the guardian, and dismissed them. The decree complained of will therefore be reversed and the cause dismissed.

*Reversed.*